IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KELLY PINN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY AND LEADS GURU LLC<br><br>                    Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Kelly Pinn ("Ms. Pinn"), by her undersigned counsel, for this class action complaint against Defendants Transamerica Life Insurance Company and Leads Guru LLC, as well as their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.    INTRODUCTION

1. <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2.  "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3.  Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4.  Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.   PARTIES

5. Plaintiff Pinn is an individual who resides in the Northern District of Texas.

6. Defendant Transamerica Life Insurance Company is an Iowa-based insurance company that sells its insurance policies nationwide, including in Texas.

7. Defendant Leads Guru LLC is a Florida LLC with its principal place of business in California and shares an office with Banuelos Insurance at 2300 Waterloo Rd, Stockton, CA 95205. Transamerica, through its agent, hired this defendant to place illegal telemarketing calls on its behalf.

## III.   JURISDICTION AND VENUE

8. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Court has specific personal jurisdiction over Defendants Transamerica Life Insurance Company and Leads Guru LLC because they directed their illegal conduct into Texas for the purposes of selling insurance to Texans using illegal robocalls directed to Texas area codes.

10. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent into this District.

## IV. FACTS

### A. The Enactment of the TCPA and its Regulations

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### B. Unsolicited Telemarketing to Plaintiff

16. Plaintiff Pinn is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff Pinn's telephone number, (817) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

4

18. Plaintiff Pinn uses the telephone number for her own personal, residential, and household needs and reasons.

19. Plaintiff Pinn does not use the number for business reasons or business use.

20. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

21. Plaintiff Pinn's number has been on the National Do Not Call Registry for years since she registered it on the Registry prior to receiving the calls at issue.

22. Despite that, Ms. Pinn received at least 12 automated calls from the same caller ID 334-402-6166 between August 8, 2023 and August 15, 2023.

23. The callers all stated that they were calling from the clearly and illegally factiously named "senior benefits" and were calling to sell the Plaintiff a life insurance policy.

24. During the sixth such call that Plaintiff received on August 9, 2023 at 3:42 PM, the Plaintiff gave the Defendants another telephone number in an effort to attempt to identify the caller and for no other reason.

25. Despite that, the Plaintiff received another incoming call on the number at 3:49 PM.

26. This call was followed up with an additional call to the alternate number that the Plaintiff provided during the call at 3:42 PM. During this call, the Plaintiff was transferred to Nate Johnson who attempted to sell the Plaintiff a Transamerica life insurance policy. Plaintiff asked for an email and indicated that she would contact Mr. Johnson back if she was interested.

27. The Plaintiff continued to receive four calls from the same caller ID to her number, not the alternative number, between August 9, 2023 and August 15, 2023.

28. The Plaintiff stated that she was not interested and to stop calling.

29. But during one call on August 10, 2023 at 3:18 PM, which was received to the number, the Plaintiff was initially greeted by the fictitious "senior benefits" again and was transferred, again, to Nate Johnson, from whom the Plaintiff purchased a policy for the sole purpose of identifying the caller who was calling her illegally and ignoring her do not call requests.

30. The Plaintiff also received a copy of the proposed policy and application for said policy she was sold during the illegal telemarketing call, together with payment instructions. That proposed policy and application demonstrates it was sent from Transamerica agent Nathan Johnson and prominently features the Transamerica logo and trade name throughout the documentation and emails.

31. None of the aforementioned Defendants are registered as telephone solicitors with the Texas Secretary of State.

32. The Plaintiff thereafter undertook an investigation by contacting Transamerica to determine why she was receiving illegal telemarketing calls.

33. In response, Transamerica went into full on panic and damage control mode, and their story kept changing.

34. Ultimately, Transamerica's story, as confirmed through correspondence which was not marked under Rule 408, was that Nate Johnson, its licensed and authorized insurance agent, hired a lead generation company, Defendant Leads Guru LLC, to make the calls.

35. In an effort to deflect blame from Defendant Leads Guru LLC, whom Transamerica tellingly did not deny was authorized to act on its behalf, it stated that Leads Guru

acted through an individual named "Mo" at Banuelos Insurance, whom it contended was not a Transamerica agent or authorized to sell Transamerica policies.

36. Transamerica also hurriedly tried to pick the Plaintiff off by sending her a proposed, non-Rule 408 settlement agreement purporting to release Transamerica and Nate Johnson for $1,000. Plaintiff, of course, did not sign or accept this agreement.

37. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

38. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

39. The FCC has instructed that sellers such as Transamerica may not avoid liability by outsourcing telemarketing to third parties, such as Leads Guru:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

40. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of

agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

41. Transamerica is liable for telemarketing calls placed by Leads Guru and transferred to Transamerica and its agents to generate customers for Transamerica and its agents, including the Plaintiff.

42. Transamerica was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

43. To do so, it hired Leads Guru to orchestrate an *en masse* telemarketing campaign.

44. Transamerica controlled the day-to-day activities of Leads Guru by providing the specific criteria for the leads it would accept and required its vendors, including Leads Guru, to adhere to those criteria.

45. For example, the calls Plaintiff received demonstrate that Transamerica required its vendor to use the same caller ID but disguise itself as the illegal and fictitiously named "senior benefits" such as to avoid ill will toward Defendant's brand or directed at its agents.

46. It also instructed Leads Guru to attempt to salvage potentially interested customers by incessantly calling them again and again, and ignoring repeated do not call requests, until such point as they confirmed that the buyer applied for, bought, signed, and paid for a policy.

47. Defendants did so despite numerous explicit indications that the Plaintiff was not interested and did not want any further calls.

48. As such, Transamerica controlled the content of Leads Guru's telemarketing.

49. It also could and should have communicated Plaintiff's multiple requests not to be called to Leads Guru.

50. Leads Guru, likewise, could and should have communicated Plaintiff's multiple requests not to be called to Transamerica.

51. Finally, Transamerica could have terminated Leads Guru.

52. It did not.

53. By virtue of identifying the leads that they would accept and directing the conduct and other indicia of the calls at issue described above, Transamerica directed the content of the communications that Leads Guru would use in their calling.

54. A reasonable seller whose telemarketers are making calls would investigate into the reasons why they would be calling numbers on the National Do Not Call Registry and, moreover, individuals who already stated that they no longer wished to receive calls from Transamerica or Leads Guru.

55. Indeed, Transamerica could have investigated if the transfers it received were on the National Do Not Call Registry.

56. It did not.

57. Transamerica hired Leads Guru without a proper investigation and did not terminate them when they were informed of Leads Guru's illegal calling conduct.

58. As such, they knowingly ratified Leads Guru's conduct.

59. Transamerica also ratified Leads Guru's conduct because, with knowledge of Plaintiff's complaints against Transamerica and do not call requests to a Transamerica agent, they accepted the Plaintiff's lead and ultimately sold the Plaintiff a policy.

60. Transamerica accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her after she made clear she did not want the calls.

61. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

62. Plaintiff's privacy has been violated by the above-described telemarketing calls.

63. Plaintiff never provided her consent or requested these calls.

64. The aforementioned calls to the Plaintiff were unwanted.

65. The calls were non-consensual encounters.

66. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.   CLASS ACTION ALLEGATIONS

67. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Leads Guru or Transamerica, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

68. Excluded from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

69. The Class, as defined above, is identifiable through telephone records and telephone number databases.

70. The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

71. Individual joinder of these persons is impracticable.

72. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

73. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

74. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

75. This class action complaint seeks injunctive relief and money damages.

76. There are numerous questions of law and fact common to Plaintiffs and members of the Class. These common questions of law and fact include, but are not limited to, the following:

    a. Whether Transamerica is vicariously liable for the actions of Leads Guru, and the corresponding liability as between them;

    b. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

       c.      whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

       d.      whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

77.     Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

78.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

79.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

80.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple

individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

81. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

82. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

83. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

84. Defendants' violations were negligent, willful, or knowing.

85. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

86. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Class of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this March 22, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*