**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| Kelly Pinn<br><br>                    Plaintiff,<br>    v.<br><br>TransAmerica Life Insurance Company et al<br>                   Defendants. | Case No. 4:24-cv-00266-P<br><br>**JURY TRIAL DEMANDED** |

**MOTION AND BRIEF IN SUPPORT OF MOTION
TO COMPEL TRANSAMERICA LIFE INSURANCE COMPANY
<u>TO PROVIDE DISCOVERY RESPONSES</u>**

**Contents**

INTRODUCTION .......... 4
BACKGROUND .......... 4
STANDARD .......... 6
ARGUMENT .......... 7
1. TransAmerica's Responses Should Be Compelled Because It Has Not Met Its Burden For Demonstrating a Reason For Nonproduction. .......... 7
2. The Requests are Principally Relevant to a Vicarious Liability Analysis. .......... 10
3. The Requests are Also Relevant to the Damages Analysis in this Case. .......... 13
CONCLUSION .......... 15
CERTIFICATE OF CONFERENCE .......... 16
CERTIFICATE OF SERVICE .......... 17

## CASES

*Aiken v. Texas Farm Bureau Mutual Insurance Co.*, 151 F.R.D. 621 (E.D. Tex. 1993) ............... 9
*Am. Kitchen Delights, Inc. v. Signature Foods, LLC*, No. 16-CV-08701, 2018 U.S. Dist. LEXIS 45184 (N.D. Ill. Mar. 20, 2018) ................. 12
*Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*, No. 2:18-CV-166-Z-BR, 2020 WL 520608 (N.D. Tex. Jan. 13, 2020) ................. 9
*Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) ............................. 5
*Bratcher v. Navient Sols., Inc.,* No. 3:16-cv-519-J-20JBT, 2017 U.S. Dist. LEXIS 35015 (M.D. Fla. Mar. 2, 2017) ................. 15
*Braver v. Northstar Alarm Sercs., LLC*, 2019 U.S. Dist. LEXIS 118080 (W.D. Okla. 2019) ..... 10
*Duron v. Costco Wholesale Corp.*, No. EP-23-CV-00324-KC-MAT, 2024 WL 3730278 (W.D. Tex. Aug. 7, 2024) ................. 7
*Hickman v. Taylor*, 329 U.S. 495 (1947) ................. 6
*In re Auclair,* 961 F.2d 65 (5th Cir. 1992) ................. 9
*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476 (N.D.W. Va. Jan. 28, 2014) ................. 10, 11, 14
*In re Santa Fe Int'l Corp.*, 272 F.3d 705 (5th Cir. 2001) ................. 7
*Jones v. Safe Streets USA LLC*, No. 5:19-CV-394-BO, 2020 WL 3261096 (E.D.N.C. June 16, 2020) ................. 11
*Krakauer v. Dish Network, L.L.C*., 925 F.3d 643 (4th Cir. 2019) ................. 4, 13, 14
*Kristensen v. Credit Payment Servs.*, 879 F.3d 1010 (9th Cir. 2018) ................. 13
*Lardner v. Diversified Consultants Inc.*, No. 1:13-CV-22751-UU, 2014 WL 1979221 (S.D. Fla. May 8, 2014) ................. 12
*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ................. 7
*Merrill v. Waffle House, Inc.*, 227 F.R.D. 475 (N.D. Tex. 2005) ................. 7
*Morser v. Hyundai Cap. Am., Inc.*, No. 2:15-CV-117-FTM-29CM, 2015 WL 4527016 (M.D. Fla. July 27, 2015) ................. 12
*S.E.C. v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006) ................. 7
*Woodard v. Quote Storm Holdings, LLC*, No. 23 C 55, 2023 U.S. Dist. LEXIS 90743 (N.D. Ill. May 24, 2023) ................. 10

## STATUTES

47 C.F.R. § 64.1200(c)(2) ................. 4
47 U.S.C. § 227(c)(5) ................. 14
Fed. R. Civ. P. 26(b)(1) ................. 6
Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227 ................. 4

## OTHER AUTHORITIES

Manual for Complex Litigation (Third) ................. 9

**INTRODUCTION**

Discovery in this matter has revealed that TransAmerica Life Insurance Company's agent, Nate Johnson, hired Defendant Banuelos Insurance d/b/a LeadsGuru to place the calls at issue. However, as this matter is proceeding as a class action with a vicarious liability component as to Defendant TransAmerica, the Plaintiff propounded an interrogatory seeking information as to whom TransAmerica has disciplined for taking similar calls and conduct, as well as documents relating to vendors like Johnson and LeadsGuru's failure to abide by policies or agreements regarding the sending of outbound calls. For the reasons that follow, the documents are relevant and proportional to the needs of the case and fulsome responses to this interrogatory and request for production should be compelled by the Court.

**BACKGROUND**

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227 (2012)). . . . The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. . . . Private suits can seek either monetary or injunctive relief….Violations of the law are clear, as is the remedy." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019). "In the context of the

TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two Classes under the TCPA).

In this lawsuit, Ms. Pinn has alleged that TransAmerica contracts with an agent, Nathan Johnson, who made calls and contracted with a telemarketing firm, Defendant Banuelos, to make telemarketing calls to consumers who have never had a relationship and who have never consented to receive their calls. This includes TransAmerica. The telemarketing vendors that were hired made their own calls or utilized other physical call center locations, all of which were subject to TransAmerica and Johnson's direction and control. Due to the *en masse* nature of telemarketing, the Plaintiff has filed this matter on behalf of the following putative class:

> **National Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Leads Guru, Johnson or TransAmerica, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

Discovery has commenced. Upon information and belief, as confirmed through numerous publicly available court records, TransAmerica has received multiple complaints of unlawful telemarketing that has been conducted by its agents and the third-party vendors hired by those agents. Those complaints presumably involved, or did not involve, discipline, termination, and other corrective measures taken against other agents, like Johnson, and other vendors, like LeadsGuru. The Plaintiff served discovery requests for those complaints and related documents, the requests and final amended responses for which are below:

> **INTERROGATORY NO. 11**: *Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.*

5

**ANSWER:** TransAmerica objects to this interrogatory as vague and ambiguous, overly broad, and unduly burdensome. Among other things, the interrogatory lacks any temporal, geographic, or subject matter limitations. TransAmerica also objects on the grounds that the interrogatory seeks information that is not relevant to the claims or defenses. TransAmerica further objects to the extent this interrogatory seeks confidential or proprietary information. Subject to and without waiving these objections, TransAmerica states that it has not taken any disciplinary action against any individual related to the calls allegedly made to Plaintiff.

**REQUEST FOR PRODUCTION NO. 4**: *Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.*

**ANSWER:** TransAmerica objects on the grounds that this request is overly broad and seeks documents not relevant to the claims or defenses. TransAmerica also objects because the phrase "outbound calls" is undefined and is vague and ambiguous. TransAmerica further objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege. Subject to and without waiving these objections, TransAmerica states that it did not employ or contract with any person or vendor to make outbound calls as part of a call campaign that resulted in a call to the Plaintiff.

The parties exchanged numerous meet and confer emails regarding these requests and others, which included a telephone call on August 13, 2024 at 2:00 PM, as well as follow-up emails. The parties are at an impasse with the above requests.

## STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules of Civil Procedure broadened the scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this scope need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *McLeod, Alexander, Powel &*

*Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

## ARGUMENT

### 1. TransAmerica's Responses Should Be Compelled Because It Has Not Met Its Burden For Demonstrating a Reason For Nonproduction.

TransAmerica's objections should be overruled as an initial matter as they have not carried their burden with respect to any of the stated objections as a reason for nonproduction. As our very own Fifth Circuit has counseled time and again, arguments against discovery must be supported by *specific examples* and *articulated reasoning*, together with complementary evidence. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). The party resisting discovery must show specifically how each interrogatory or request is not relevant or specifically state a valid objection thereto. *McLeod,* 894 F.2d at 1485. Conclusory objections such as "overly broad, burdensome, and oppressive" are not adequate to voice a successful objection. *Id.*; *Duron v. Costco Wholesale Corp.*, No. EP-23-CV-00324-KC-MAT, 2024 WL 3730278, at *2 (W.D. Tex. Aug. 7, 2024).

The Defendant here has provided no evidence to bear its burden of demonstrating the applicability of its objections here. To the contrary, the document request and interrogatory sought to be compelled seeks information highly relevant to TransAmerica's primary defence, one they themselves put at issue, of vicarious liability. This issue is even more so palpable here, where TransAmerica *admitted* that it *continues* to have Johnson on as its agent, including in the

7

face of the highly illegal robocalling conduct and other conduct, which violates numerous portions of Mr. Johnson's agent agreement with TransAmerica. As will be explained below, information as to whether other agents were similarly not reprimanded for similar conduct will be probative of the Plaintiff's ratification theory of vicarious liability.

To that end, TransAmerica's other objections may be quickly dispensed with. The interrogatory is not "vague and ambiguous." An "outbound call" is hardly vague and means just that: a call placed to a customer or potential customer, as opposed to a call that those individuals placed to TransAmerica or its agents. Nor are both requests overly broad nor the interrogatory unduly burdensome. As an initial matter, TransAmerica has not quantified what about these requests are overly broad or purportedly burdensome, rendering these objections speculative at best. At worst, its response would be substantially problematic. If TransAmerica is so burdened by identifying a mountain of complaints and discipline imposed on agents and vendors for blatantly violating the TCPA, it has no business continuing to do business in the way it continues to do so as this would reveal a significant pattern and practice of illegal wholesale unmitigated calling conduct. On the flip side, if TransAmerica has had few such complaints, it would doubtlessly have no trouble producing them particularly where, as here, it claims that the entire issue is a fluke, a one-off, and does not reflect the way it typically does business.

Finally, TransAmerica objects to the requests as protected by the "attorney-client privilege, the work product doctrine, and/or the common interest privilege," as well as seeking "confidential or proprietary information." With respect to the latter, the proper solution is to seek a protective order or designate the interrogatory response confidential. *See, e.g.*, *Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*, No. 2:18-CV-166-Z-BR, 2020 WL 520608, at

*10 (N.D. Tex. Jan. 13, 2020) ("The Court finds the parties' Agreed Protective Order addresses any concerns regarding the proprietary and confidential nature of the documents sought.").

And through TransAmerica has produced a limited privilege log, it is deficient in that it does not identify the requests pursuant to which it is produced and also is limited only to those communications specifically involving Ms. Pinn's prelitigation and litigation-related correspondence. In complex litigation, compliance with Rule 26(b)(5) is "usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter." MANUAL FOR COMPLEX LITIGATION (THIRD) § 21.431 (1995). And though TransAmerica has produced such a log, it limited its responses only to purportedly privileged communications with respect to the instant litigation, not to all such instances of conduct which is sought. At the very least, the Court should compel TransAmerica to produce a complete privilege log in this putative class action that is not just limited to the communications it had related to Ms. Pinn.

Moreover, TransAmerica has produced no documents or logged any communications evidencing a common interest or joint defence agreement, nor can it, as Mr. Johnson has retained his own counsel in this matter, and Defendant Banuelos is in default. In *In re Auclair,* 961 F.2d 65, 69 (5th Cir. 1992), our very own Fifth Circuit stated that the common interest privilege extends to communications made among persons "who consult an attorney together as a group *with common interests seeking common representation.*" And though the privilege does extend to co-defendants and their counsel made prompted by threatened or actual litigation, the communications must have been necessary to "facilitate representation or the rendition of legal services," not merely made to reprimand, discipline, or otherwise take action against Mr. Johnson or his vendor. *Aiken v. Texas Farm Bureau Mutual Insurance Co.*, 151 F.R.D. 621, 623

(E.D. Tex. 1993). That standard is plainly unmet here, not the least of which because the privilege log contains no documents relating to a common interest or joint defence.

Because TransAmerica has not met its burden of demonstrating that any of its objections are sufficient, a full response should be compelled on this basis alone.

### 2.  The Requests are Principally Relevant to a Vicarious Liability Analysis.

Here, the production falls far short of the already liberal standards for discovery as the Plaintiff is simply seeking to pursue information that the *defendant has put at issue* by claiming that it is not vicariously liable for the telemarketing conduct of its agents and call centres hired by those agents. Multiple courts have ordered similar discovery to occur because the requested evidence is critical to the fact intensive inquiry necessary to resolve the question of vicarious liability, as other courts have held in the TCPA vicarious liability context. *See, e.g.*, *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476, at *6-7 (N.D.W. Va. Jan. 28, 2014) (granting motion to compel discovery relevant to vicarious liability in a TCPA telemarketing case); *Braver v. Northstar Alarm Sercs., LLC*, 2019 U.S. Dist. LEXIS 118080, *18-25 (W.D. Okla. 2019) (detailing email and other communications as basis for finding vicarious liability in a TCPA telemarketing case); *Woodard v. Quote Storm Holdings, LLC*, No. 23 C 55, 2023 U.S. Dist. LEXIS 90743, at *7-9 (N.D. Ill. May 24, 2023).

Recognizing the needs for these documents to engage in a vicarious liability analysis, the Court in *Monitronics* compelled responses to various interrogatories and requests for production related to complaints, including requests nearly identical to here of:

> Interrogatory No. 1: Describe in detail all actions you have taken (e.g., training provided, seminars, investigations, responses to complaints, disciplinary measures) to ensure that your authorized dealers who use telemarketing to generate customers comply with the TCPA and state telemarketing laws.
>
> RFP No. 1: Produce all documents concerning actions you have taken (e.g., training provided, seminars, investigations, responses to complaints, disciplinary measures) to

> ensure that your authorized dealers who use telemarketing to generate customers comply with the TCPA and state telemarketing laws.

2014 WL 316476, at *2.

It reasoned:

> As noted above, Mey also contends that complaints and information regarding other dealers is relevant for determining whether Monitronics and UTC can be held vicariously liable for VMS' alleged violations of the TCPA. Specifically, Mey argues that this information is relevant to her theory that Monitronics and UTC ratified the alleged violations committed by VMS. Monitronics and UTC both contend that this information is not relevant. . . .
>
> Judge Keeley stated that such information was "highly germane" as to whether Monitronics and UTC ratified the alleged violations of the TCPA by VMS. Notably, Judge Keeley did not note that such information should be limited to information concerning VMS and its agents. . . . Given these conclusions, the undersigned finds that the requested discovery is relevant to Mey's claims that Monitronics and UTC are vicariously liable for VMS's alleged violations. Specifically, such information is relevant to Mey's theory of ratification. For example, information regarding other dealers may show that Monitronics and UTC responded differently to other dealers accused of violating the TCPA than they did to VMS. Such evidence would be relevant for demonstrating whether Monitronics and UTC took "effective steps within its power to force [VMS] to cease [its] conduct.
>
> *Id.* at *6-7 (cleaned up).

Similarly, in *Jones v. Safe Streets USA LLC*, No. 5:19-CV-394-BO, 2020 WL 3261096, at *4 (E.D.N.C. June 16, 2020), Court said, with respect to not just reprimands but also vendor correspondences:

> Safe Streets objects to producing lists of past TCPA litigation or complaints, but such information is plainly related to willfulness and the issue of damages and is thus discoverable. *See Osborne v. Gila, LLC*, No. 15-62585-CV, 2016 WL 7508260, at *2 (S.D. Fla. May 24, 2016) ("Because the TCPA provides for additional damages if violated willingly or knowingly, the production of the information Plaintiff seeks would be relevant in determining if Defendant knew of the TCPA, and its restrictions, when it allegedly placed calls to Plaintiff."); *Pollock v. Northland Grp., Inc.*, No. 12-80335-RYSKAMP, 2012 WL 12905878, at *1 (S.D. Fla. Aug. 22, 2012).

11

> Plaintiffs' second motion to compel is also granted. In their second motion, plaintiffs seek discovery concerning Safe Streets' potential vicarious liability for the telemarketing conduct of co-defendants. The internal correspondence related to the vendors that contacted plaintiffs is relevant to show whether Safe Streets can be held vicariously liable for their vendors' conduct. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019). The request for documents related to complaints or do-not-call requests has been addressed above.

Here, TransAmerica has not identified nor produced documents regarding any of its agents, or vendors hired by either TransAmerica or those agents, which were reprimanded for engaging in illegal calling conduct, nor produced any correspondence with or about those vendors and agents. The "existence of an agency relationship is a fact-intensive inquiry that is generally best evaluated after discovery." *Am. Kitchen Delights, Inc. v. Signature Foods, LLC*, No. 16-CV-08701, 2018 U.S. Dist. LEXIS 45184, at *12 (N.D. Ill. Mar. 20, 2018). Accordingly, proving a culture of non-compliance or wilful ignorance of agents' and vendors' illegal calling conduct, as admittedly with Mr. Johnson and the fact that he still has not been terminated despite breaching numerous portions of his agreement with TransAmerica, is a hallmark of agency.

Numerous courts have held that identical information would prove a vicarious liability theory of agency on ratification grounds. "A finder of fact could conclude that the existence of multiple complaints suggests that [defendant] was aware it was violating the TCPA." *Morser v. Hyundai Cap. Am., Inc.*, No. 2:15-CV-117-FTM-29CM, 2015 WL 4527016, at *3 (M.D. Fla. July 27, 2015) "If there is prior litigation finding that Defendant violated the TCPA using the same practices as it did in the present action, then this evidence would support a finding that Defendant knew it was violating the TCPA." *Lardner v. Diversified Consultants Inc.*, No. 1:13-CV-22751-UU, 2014 WL 1979221, at *1 (S.D. Fla. May 8, 2014).

If TransAmerica was aware that its agents and vendors were making calls and engaging in conduct that violated the TCPA, then they can be held vicariously liable for the similar

12

subsequent conduct of other agents. Indeed, as the Ninth Circuit Court of Appeals has held in the context of a TCPA case, if a principal "has knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation," the principal has "assumed the risk of liability" and is vicariously liable. *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014 (9th Cir. 2018). Furthermore, as the Fourth Circuit explained in a TCPA case, "Given the tens of thousands of violative calls SSN made in a span of just over a year, even a cursory investigation or monitoring effort by Dish would have uncovered the violations. Under these circumstances, what Dish calls a mistaken belief is actually willful ignorance." *Krakauer,* 925 F.3d at 662.

Understanding what TransAmerica's reaction was to TCPA complaints, including terminating the vendors and agents, reprimanding them, or alternatively even settling claims against them right away for potentially substantial money and then simply looking the other way will certainly be relevant to the issues in this case. However, the Plaintiff cannot learn of the resolutions of such cases without the underlying information about the complaints and responses. Moreover, the Plaintiff cannot ascertain just how quickly TransAmerica made such payments, reprimands, or other actions, and to what financial amount, without the documents themselves. For example, if TransAmerica paid $1,000, a nominal amount to resolve a claim that was just filed as it attempted to do in a "pick off" attempt against the Plaintiff, or $100,000 to resolve the same claim, that information can be relevant to what TransAmerica believed further pursuit of that case and relationship would have revealed if it had investigated.

As such, the information sought is relevant to liability and should be compelled.

### 3.   The Requests are Also Relevant to the Damages Analysis in this Case.

In addition, the requests are also relevant to a damages analysis. The TCPA also allows for a damages award to be increased, up to treble damages, if the violation is found to be

13

"knowing or willful." 47 U.S.C. § 227(c)(5). Here, the Plaintiff seeks similar information which has previously been compelled in other TCPA lawsuits. Indeed, as the Court observed in *Monitronics*, "complaints and information regarding other dealers are relevant to whether Monitronics' and UTC's alleged violations of the TCPA were willful and knowing. 2014 WL 316476, at *5.

     Not all of TransAmerica's settlements, discipline, and reprimands about TCPA issues have come from filed lawsuits, either. A vast majority of them likely came through do-not-call complaints and other informal mechanisms, like responses to state attorneys general.  As such, the documents and interrogatory response may be the best (and potentially only) evidence that exists for some of TransAmerica's telemarketing complaints including various agents and vendors to demonstrate knowing and willful conduct. The discovery is thus relevant to whether TransAmerica either was aware of the TCPA or was aware that their agents, including Johnson, were violating the TCPA and whether they took action to stop such alleged violations. *Id.* at *6.

     There is also no meaningful dispute that this information may possibly be introduced at trial. In fact, the Fourth Circuit Court of Appeals affirmed a jury verdict holding a defendant vicariously liable and subject to willful damages under the TCPA following a 5-day trial. *Krakauer*, 925 F.3d at 643. In *that* lawsuit, the defendant's history of receiving prior complaints, their responses to those complaints, and settlements of such lawsuits were *all* issues considered by the jury. *Id.* at 662 (4th Cir. 2019) ("The court documented the many occasions on which Dish noted SSN's noncompliance and failed to act. The trial court catalogued the lawsuits and enforcement actions brought against Dish for telemarketing activities, none of which prompted the company to seriously improve its business practices…When it learned of SSN's noncompliance, Dish repeatedly looked the other way…The district court also noted the half-

14

hearted way in which Dish responded to consumer complaints, finding that the evidence shows that Dish cared about stopping complaints, not about achieving TCPA compliance.").

As there is no meaningful dispute that it is possible that the exact evidence that the Plaintiff seeks could be put into evidence at trial and as a result, the information sought is discoverable. Indeed, granting a similar motion to compel in a TCPA case, another Court held:

> Defendant's argument that the information need not be produced because it is not admissible under Federal Rule of Evidence 404(b) is without merit. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Thus, the Motion will be granted.

*Bratcher v. Navient Sols., Inc.,* No. 3:16-cv-519-J-20JBT, 2017 U.S. Dist. LEXIS 35015, at *6-7 (M.D. Fla. Mar. 2, 2017).

The Court should therefore find that the requested documents are also relevant to a showing of treble damages and willfulness, that they are therefore relevant and proportional to this case's needs, and compel on this basis as well.

## **CONCLUSION**

For the reasons stated herein, the Plaintiff's motion to compel should be granted.

RESPECTFULLY SUBMITTED AND DATED this October 24, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

15

/s/ *Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF CONFERENCE

We hereby certify that we conferred with counsel for TransAmerica, regarding the subject of this motion, which is opposed. The parties exchanged numerous meet and confer emails regarding these requests and others, which included a telephone call on August 13, 2024 at 2:00 PM attended by Andrew Perrong for Plaintiff and Kate Freeman and Larry Kristinik for the Defendant TransAmerica, as well as follow-up emails including the above, and also including Anthony Paronich for Plaintiff and Cary Slobin, Yasmeen Ebbini, and Kevin Werner for Defendant. An agreement could not be reached because the parties are at an impasse with respect to the subject matter of the motion, as confirmed through email correspondence dated September 10, 2024.


*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

*/s/ Anthony Paronich*
Anthony Paronich

16

## **CERTIFICATE OF SERVICE**

We hereby certify that on October 24, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.
>
>*/s/ Anthony Paronich*
>Anthony Paronich