**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KELLY PINN, individually and on behalf of herself and others similarly situated,** | ) ) ) ) | |
| | ) | **Civil Action No. 4:24-cv-00266-P** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRANSAMERICA LIFE INSURANCE COMPANY, NATHAN JOHNSON, AND BANUELOS INSURANCE AGENCY LLC D/B/A LEADS GURU,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT TRANSAMERICA'S RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................2

INTRODUCTION................................................................................................................3

ARGUMENT ......................................................................................................................4

    A.  The Discovery Sought by Plaintiff Has No Bearing on Whether Transamerica Ratified the Alleged Conduct. ....................................................................................4

    B.  The Discovery Sought Is Not Relevant to the Issue of Treble Damages. ....................12

    C.  Transamerica Properly Responded to the Discovery Requests. ...................................14

        Request for Production No. 4 .........................................................................................14

        Interrogatory No. 11 ......................................................................................................15

CONCLUSION ..................................................................................................................16

CERTIFICATE OF SERVICE ..........................................................................................17

# TABLE OF AUTHORTIES

**CASES**

*Aderhold v. Car2go N.A.*, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014) ................................... 7

*Bradley v. DentalPlans.com*, 2023 WL 3979311 (D. Md. June 13, 2023) .................................... 7

*Bratcher v. Navient Solutions, Inc.*, 2017 WL 895739 (M.D. Fla. Mar. 2, 2017) ....................... 13

*Braver v. Northstar Alarm Servs.*, 2019 WL 3208651 (W.D. Okla. July 16, 2019) ................... 11

*Heller v. Marriott Vacations Worldwide Corp.*, 2023 WL 6702696, (W.D. Tex. Oct. 11, 2023)  5, 12

*Hunsinger v. Dynata LLC*, 2023 WL 2377481 (N.D. Tex. Feb. 7, 2023 ...................................... 12

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act. Litig.*, 2014 WL 316476 (N.D. W. Va. Jan. 28, 2014) ................................................................................................................. 9, 10, 11, 13

*Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577 (S.D. Ohio 2016) ...................................... 9

*Jones v. Safe Streets USA, LLC*, 2020 WL 3261096 (E.D.N.C. June 16, 2020). ........................ 12

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) ................................................... 13

*Kristensen v. Credit Payment Services, Inc.*, 879 F.3d 1010 (9th Cir 2018) ................................. 5

*Mey v. Enterprise Financial Group, Inc.*, 2016 WL 9110357 (M.D. Fla. July 27, 2016).......... 7, 8

*Pinn v. Consumer Credit Counseling Foundation., Inc.*, 2023 WL 6960293 (N.D. Cal. Oct. 20, 2023) ......................................................................................................................................... 3

*Pinn v. CycleBar Franchising, LLC*, 2023 WL 8374749 (N.D. Tex. Dec. 4, 2023) ..................... 3

*Pinn v. Glob. Exch. Vacation Club*, 2023 WL 3432136 (C.D. Cal. Mar. 13, 2023) ..................... 3

*Pinn v. Hufsey Home Services, Inc.*, No. 4:23-cv-01208-Y (N.D. Tex. Jun. 4, 2024) .................. 3

*Shields v. Gawk Inc.*, 2019 WL 1787781 (S.D. Tex. Apr. 24, 2019) ..................................... 12, 13

*Woodard v. Quote Storm Holdings, LLC*, 2023 WL 3627719 (N.D. Ill. May 24, 2023) ............. 11

**STATUTES**

47 C.F.R. § 64.1200(c)(2)(ii) ........................................................................................................ 5

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ................................................. 3

Pursuant to the Court's Order entered on October 28, 2024 (ECF 32), Defendant, Transamerica Life Insurance Company ("Transamerica"), hereby submits its response to Plaintiff's Motion to Compel filed on October 24, 2024 (ECF 30).[1]

## INTRODUCTION

Plaintiff asserts a claim under the TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *et seq.* ("TCPA"), alleging she received telephone calls when her phone number was listed on the national Do Not Call ("DNC") registry. Plaintiff is no stranger to TCPA claims. She is a serial TCPA plaintiff, having commenced no less than a dozen lawsuits in the Northern District of Texas in the last three years.[2]

It is undisputed that Transamerica did not make the alleged telephone calls to Plaintiff. The Amended Complaint alleges that insurance producer Nate Johnson hired a lead generation company called Leads Guru to make phone calls.[3] (Pl.'s Am. Compl. ¶ 36, App. 7). Plaintiff then alleges that Transamerica is "vicariously liable" for the "telemarketing calls placed by Leads Guru." (*Id.* ¶¶ 43-44, App. 8 . Pertinent to the pending motion, Plaintiff alleges that Transamerica "knowingly ratified" the conduct of Leads Guru. (*Id.* ¶¶ 67-68, App. 11).

---

[1] The Court's Order entered on October 28, 2024, permitted Plaintiff to file an amended motion in the event, after conferring, the parties were able to resolve part but not all of their discovery dispute. Counsel for the parties held conference calls on October 31, 2024, and November 5, 2024, but were unable to narrow the issues. The parties also had a conference call to discuss these issues on August 13, 2024, prior to Plaintiff filing her motion. Plaintiff did not file an Amended Motion. Accordingly, this brief responds to Plaintiff's original Motion to Compel.

[2] Searches on the PACER system reflect 13 lawsuits filed by Plaintiff in the Northern District of Texas, and 2 more filed in the Western District of Texas. Plaintiff has also filed TCPA lawsuits in California, Florida, Illinois, and Ohio. Many of these prior lawsuits were dismissed by the Court on motions filed by the defendants. *See, e.g., Pinn v. CycleBar Franchising, LLC*, 2023 WL 8374749 (N.D. Tex. Dec. 4, 2023); *Pinn v. Hufsey Home Services, Inc.*, No. 4:23-cv-01208-Y (N.D. Tex. Jun. 4, 2024) (ECF 24); *Pinn v. Consumer Credit Counseling Foundation., Inc.*, 2023 WL 6960293 (N.D. Cal. Oct. 20, 2023). One of her prior lawsuits was dismissed because Plaintiff had actually entered into a release relating to one of the alleged calls that formed the basis of her complaint. *See Pinn v. Glob. Exch. Vacation Club*, 2023 WL 3432136 (C.D. Cal. Mar. 13, 2023).

[3] Nate Johnson is an independent contractor appointed by Transamerica and other life insurance companies to be a producer for the sale of life insurance in the Texas. (Schwender Aff. ¶ 3, App. 18-19). Transamerica disputes the allegation that Mr. Johnson "hired" Leads Guru to make the alleged calls. Facts disclosed during discovery will show that Mr. Johnson gave no instructions to Leads Guru, but instead merely purchased leads that Leads Guru brought to him. Leads Guru was under no obligation to make any calls for Nate Johnson nor was it required to deliver any leads to him.

In her motion to compel, Plaintiff seeks supplemental responses to Interrogatory No. 11 and Request for Production No. 4.[4]  In summary, Plaintiff is seeking information and documents regarding instances when Transamerica disciplined other persons or vendors for making unlawful calls or identified the failure of a vendor to abide by policies relating to outbound calls.  There is no limit on the scope of these requests—there is no time or geographic limitation, nor is the requested information limited to DNC violations or to calls involving Plaintiff, Nate Johnson, or Leads Guru.  Plaintiff wants information regarding any complaint or discipline relating to phone calls for any of the thousands of independent contractor insurance producers appointed by Transamerica scattered across the United States.

Transamerica responded to Plaintiff's requests, informing Plaintiff that, after conducting a reasonable inquiry, it has no information of any complaints about telephone calls involving Plaintiff, Nate Johnson, or Leads Guru other than the present action.  Transamerica also confirmed for Plaintiff that it did not contract with Leads Guru or any other person or vendor to make the alleged calls to Ms. Pinn.  In other words, Transamerica let Plaintiff know that it did not have possession of any relevant information responsive to the requests.

Plaintiff's motion focuses on ratification as her hook for relevance.  (Pl.'s Mot. to Compel at 8, 12).  She argues that the requested information about other persons and other vendors is relevant to show that Transamerica ratified the alleged calls to Plaintiff made by Leads Guru.  As explained below, Plaintiff cannot prove that Transamerica ratified the calls allegedly made by Leads Guru to Plaintiff with evidence that some other insurance producer or some other lead generator violated the TCPA when making calls to other consumers.  Instead, Plaintiff must have

---

[4] Pursuant to LR 7.1(i), copies of the pertinent portions of the Plaintiff's discovery requests and Transamerica's responses and supplemental responses, along with supporting declarations, are included in the Appendix being filed with this brief.

evidence that Transamerica accepted a benefit from the transaction with Plaintiff knowing that *Leads Guru* was violating the TCPA when making the alleged calls to Plaintiff.[5]

Information about other persons being called by other lead generators selling leads to other insurance producers cannot possibly have any relevance to the issue of ratification in this action, nor would this discovery be "proportional to the needs of the case" as required by Rule 26(b)(1). Accordingly, the Court should deny Plaintiff's motion to compel.

## ARGUMENT

### A.    The Discovery Sought by Plaintiff Has No Bearing on Whether Transamerica Ratified the Alleged Conduct.

Under the doctrine of ratification, a defendant can be held vicariously liable for telephone calls made by an agent that were in violation of the TCPA. But the law requires that the principal have knowledge of the allegedly unlawful conduct. *See, e.g., Heller v. Marriott Vacations Worldwide Corp.*, 2023 WL 6702696, *7 (W.D. Tex. Oct. 11, 2023) ("[F]or Defendant to be held vicariously liable under an agency theory of ratification, it must have been aware of any unlawful calls made by [the alleged agent]"). The requisite knowledge can be either actual knowledge or constructive knowledge. As explained by the court in *Kristensen v. Credit Payment Services, Inc.*, 879 F.3d 1010 (9th Cir 2018), ratification can occur if there is a showing that the principal had "actual knowledge" of TCPA violations or if the principal "had knowledge of facts that would have led a reasonable person to investigate further." *Id.* at 1015. Expounding on constructive knowledge, the court stated, "The knowledge that an agent is engaged in an otherwise

---

[5] Transamerica does not concede that the alleged calls to Plaintiff violated the TCPA. If Leads Guru obtained the consent of Plaintiff, then there would be no DNC violation. *See* 47 C.F.R. § 64.1200(c)(2)(ii). The question of consent has not yet been explored in discovery.

commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities." *Id.*

It is apparent from Plaintiff's motion that she intends to use the requested discovery in an effort to show that Transamerica had constructive knowledge that Leads Guru was purportedly making illegal calls. In this case, evidence of constructive knowledge to support ratification must include, at a minimum, prior allegedly illegal calls *involving Leads Guru and/or Nate Johnson*. Evidence of alleged calls which did not involve either Leads Guru or Nate Johnson can have no relevance to the issue of ratification. Such calls involving other third parties and having no connection to Nate Johnson would not "lead a reasonable person to investigate" the legality of Nate Johnson's marketing activities.

If a producer in New York, for example, bought leads from a lead generator, and one of those leads resulted in a DNC violation and complaint by a New York consumer, those events would have no bearing on whether Transamerica was aware of a possible DNC violation when it received an application for life insurance from Nate Johnson for Plaintiff located in Texas. Nate Johnson is just one of thousands of insurance producers appointed with Transamerica. (Schwender Aff. ¶ 4, App. 19). This is not a situation where there is only a handful of agents who use a few select lead generators.

Moreover, a plaintiff cannot establish ratification with evidence of the defendant's general knowledge that other insurance producers around the country might acquire leads from lead generators and that some of those lead generators may have made calls in violation of the DNC. It would be pure speculation as to whether any other insurance producer, like Nate Johnson, was acquiring leads that were the result of illegal calls by a different lead generator. There are many lead generators operating lawfully and that properly obtain the consent of consumers being called,

for example, through websites where consumers click to provide their consent so they can receive more information on a subject of interest.  *See, e.g., Aderhold v. Car2go N.A.*, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014) (granting judgment on pleadings dismissing TCPA claim based on consent provided by checking boxes on defendant's website).

The ruling in *Bradley v. DentalPlans.com*, 2023 WL 3979311 (D. Md. June 13, 2023), illustrates the lack of relevance to the issue of ratification of TCPA complaints involving unrelated persons or entities.  The plaintiff in *Bradley* asserted that Cigna was vicariously liable for TCPA violations based on calls made by DentalPlans, a distributor of Cigna's discount dental plans.  During discovery, the plaintiff sought information about all other complaints relating to TCPA violations and efforts by Cigna to discipline other vendors for TCPA violations.  *Id.* at *2.  The plaintiff filed a motion to compel to obtain this information, arguing it was relevant "because, to the extent Cigna exercised oversight over other vendors but not DentalPlans, they are probative of *ratification . . .*"  *Id.* (emphasis added).  The court granted the motion to compel only to the extent the information related to DentalPlans (the entity that allegedly called the plaintiff).  The court denied the motion to compel to the extent it sought information relating to any person or entity other than DentalPlans.  The court held:

> As for the plaintiff's ratification theory, ratification "is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) (citing Rest. (3d) of Agency § 4.01(1)).  **It is difficult to imagine how deposition testimony on Cigna's relationship with non-DentalPlans vendors could produce probative evidence that Cigna "affirmed" DentalPlans' specific conduct**, and such an expansive line of inquiry would severely burden the defendant.

*Id.* (emphasis added).

Another example where similar discovery was rejected by the court is *Mey v. Enterprise Financial Group, Inc.*, 2016 WL 9110357 (M.D. Fla. July 27, 2016).  In *Mey*, the defendant,

7

Enterprise Financial Group ("EFG"), sold after-market auto warranties, sometimes utilizing a call center telemarketing entity named National Repair Protection, LLC ("NRP"). The plaintiff alleges that she received calls in violation of the TCPA. In addressing the plaintiff's motion to compel discovery, the court noted that many of the issues raised in the motion involved the issue of "vicarious liability," including the issue of "ratification." *Id.* at *2.

The court in *Mey* rejected the plaintiff's attempt to obtain documents relating to telemarketers other than NRP. The court noted that the complaint did not include any allegations regarding any telemarketers other than NRP, and, therefore, "Plaintiff failed to meet her initial burden of showing that information from telemarketers other than NRP is relevant to a claim or defense in this case." *Mey*, 2016 WL 9110357, *4. The court "limit[ed] the discovery to telemarketer calls made by NRP on behalf of EFG." *Id.* The court reiterated this point when addressing another discovery request, stating, "[I]nformation concerning telemarketers other than NRP is beyond the scope of discovery in this case." *Id.* at *6. With respect to the request for consumer complaints, the court required only that the defendant produce TCPA consumer complaints involving NRP, and held that the request was "overbroad because it requests information concerning telemarketers other than NRP[.]" *Id.* at *8. The court made these rulings "recogniz[ing] that the theory of liability in this case is based on vicarious liability[.]" *Id.* at *7. Indeed, the court noted that the plaintiff in *Mey*, as Plaintiff here, argued that consumer complaints involving other telemarketers was relevant to show that "EFG *was aware* that third-party telemarketers were soliciting on its behalf and violating the law," thereby making "EFG vicariously liable for such calls." *Id.* at 11 (emphasis added). The court rejected this argument.

Simply put, alleged TCPA violations involving third party entities and individuals unrelated to the specific calls to Plaintiff can have no relevance to the issue of ratification. Those

alleged violations do nothing to show that Transamerica had any reason to believe that Nate Johnson might be purchasing leads from Leads Guru or that Leads Guru might not be in compliance with the TCPA when making calls to consumers. This is especially true because Transamerica has no record of a prior TCPA complaint involving Nate Johnson. (Altare Aff. ¶ 3, App. 20-21). Alleged violations related to other persons or entities not involved in the alleged calls that are the subject of the Complaint have no relevance to the issue of ratification. *See, e.g., Johansen v. HomeAdvisor, Inc*., 218 F. Supp. 3d 577, 588 (S.D. Ohio 2016) (holding that evidence that plaintiff had complained to the defendant about DNC violations by other third party telemarketers was insufficient to support a finding of ratification, even under the "should have known" standard).

Plaintiff relies heavily on *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act. Litig.*, 2014 WL 316476 (N.D. W. Va. Jan. 28, 2014), in support of its argument that information about third parties is relevant in this context. It is important to understand the facts in *Monitronics* to understand why it is distinguishable and why the ruling is inapplicable here. In *Monitronics*, the plaintiff alleged that the defendant Monitronics was vicariously liable for calls made by one of Monitronics' authorized dealers, Versatile Marketing Solutions ("VMS"), that allegedly violated DNC restrictions under the TCPA. There was no question that VMS was hired by Monitronics for the specific purpose of making telemarketing calls to consumers.[6] It is also apparent that there had been other TCPA complaints involving VMS, the dealer connected with the call to the plaintiff.[7]

---

[6] In its Answer to the Third Amended Complaint, Monitronics admitted that VMS relied primarily if not exclusively on telemarketing with customers and that Monitronics was aware that VMS used telemarketing. (Monitronics Ans. ¶ 27, App. 27).

[7] In Monitronics' response to the plaintiff's motion to compel, it explained that there had already been discovery on the issue of what actions Monitronics had taken with respect to VMS based on Monitronics' knowledge of VMS's actions. (Monitronics Resp. to Pl.'s Mot. to Compel at 9, App. 53).

Finding the requested discovery relevant, the court stated: "[I]nformation regarding other dealers may show that Monitronics and UTC *responded differently to other dealers* accused of violating the TCPA than they did to VMS. Such evidence would be relevant for demonstrating *whether Monitronics . . . took 'effective steps* within its power to force [VMS] to cease [its] conduct.'"[8] *Id.* at \*7 (emphasis added, alterations in original). It is not surprising the court found the discovery relevant. There was no question that VMS had prior alleged violations about which Monitronics was aware, so the court found that Monitronics' actions in similar situations was relevant, and, in particular, to show how Monitronics handled other situations in comparison to how Monitronics handled prior alleged violations involving VMS.

Here, however, Transamerica has no history of TCPA complaints involving Nate Johnson other than the complaint by Plaintiff. (Altare Aff. ¶ 3, App. 20-21). It has had no reason to take any actions with respect to Mr. Johnson regarding prior alleged TCPA violations because there have been none Transamerica is aware of. Transamerica's actions with respect to other producers around the country cannot be compared to any actions taken in the past with Mr. Johnson with respect to prior alleged TCPA violations because there have not been any.

Moreover, unlike VMS and other dealers in *Monitronics*, Transamerica does not contract with its appointed insurance producers for the purpose of making calls. (Schwender Aff. ¶ 5, App. 19). In *Montronics*, it was VMS that actually made the calls. Here, Plaintiff alleges that it was Leads Guru that made the calls, not Nate Johnson. (Pl.'s Am. Compl. ¶¶ 36, 44, 51-52, App. 7-10). Accordingly, in *Monitronics*, the court was faced with the question whether discovery relating

---

[8] Notably, the magistrate judge addressing the motion to compel was relying on a prior ruling from the district judge finding the requested complaints to be germane to the issue of whether Monitronics ratified the alleged violations by VMS. *Monitronics,* 2014 WL 316476, at \*7.

to *other telemarketers* hired directly by the defendant was relevant to the issue of ratification. That is not the situation here.

Plaintiff is seeking discovery regarding *other insurance producers*, some of whom might buy leads from telemarketers, but who are not themselves telemarketers. Unlike *Monitronics*, the disputed discovery does not relate to other lead generators like Leads Guru making the calls.[9] While there perhaps was some possibility in *Monitronics* that complaints against other telemarketers may have put Montronics on inquiry notice of violations by VMS, that certainly is not the case here where alleged violations against other insurance producers, who are not hired to make telemarketing calls, would have no bearing on whether Transamerica should have conducted an investigation of Nate Johnson.

The other cases two cases cited by Plaintiff on page 10 of her brief in support of the requested discovery are readily distinguishable and inapposite to the present situation. In *Braver v. Northstar Alarm Servs.*, 2019 WL 3208651 (W.D. Okla. July 16, 2019), the court ruled that the defendant was liable based on ratification by relying on evidence that the defendant had knowledge that *the telemarketer who called the plaintiff* was making thousands of calls in violation of the TCPA. There is no discussion in the court's ruling about complaints made about *other telemarketers* who had not been involved in the alleged calls to the Plaintiff. In *Woodard v. Quote Storm Holdings, LLC*, 2023 WL 3627719 (N.D. Ill. May 24, 2023), the court was addressing a jurisdictional motion and ruled that jurisdictional discovery would be permitted to go forward. There was no discussion of ratification, nor any discussion of the relevance of purported TCPA

---

[9] Transamerica has no contractual arrangement with Leads Guru or any other telemarketing entity for the purpose of making sales calls. (Schwender Aff. ¶ 6., App. 19).

11

violations by parties unrelated to the alleged calls to the plaintiff.  Neither *Braver* nor *Woodard* provides any insight into the issues before the Court.

Plaintiff also cites to *Jones v. Safe Streets USA, LLC*, 2020 WL 3261096 (E.D.N.C. June 16, 2020).  In *Jones*, the court addressed the relevance of discovery regarding the actual vendors that allegedly called the plaintiff.  Information about other vendors having nothing to do with the calls to the plaintiff was not at issue.  As the court stated, "Safe Streets argues that the request for a list of new customers it received from any vendor associated with either of the plaintiffs is overbroad and not relevant.  The request is not overbroad, as it is tailored to any vendor *associated with the plaintiffs* and does not include a request for new customers generated by any vendor of Safe Streets."  *Id.* at *4.

Significantly, Plaintiff cites to no case in which TCPA claims were brought against a life insurance company and a court found relevant information about TCPA complaints involving insurance producers or lead generators unrelated to the alleged calls made to the plaintiff.  This is because there is no basis for finding such information to be relevant.

**B.    The Discovery Sought Is Not Relevant to the Issue of Treble Damages.**

Plaintiff argues that the requested discovery is relevant to show that there was a "knowing or willful" violation of the TCPA that would support treble damages.  (Pl.'s Mot. to Compel at 13-14).  The court in *Shields v. Gawk Inc.*, 2019 WL 1787781 (S.D. Tex. Apr. 24, 2019), uses the standard most commonly cited by federal district courts in Texas for determining a knowing and willful violation for purposes of entitlement to treble damages under the TCPA, stating that the defendant must "have reason to know, or should have known, that his conduct would violate the

statute."[10]  *Id.* at *4.  In *Shields*, the court refused to award treble damages because there was a lack of evidence that the defendant was "more than negligent in its TCPA violation" or that the defendant "knew or should have known [he] was violating the TCPA."  *Id.*

As expressed in *Shields*, the relevant inquiry for treble damages is whether the defendant had reason to know or should have known that its conduct would violate the TCPA.  Plaintiff cites to cases holding that other instances of potentially violative conduct *by the defendant* can be relevant to this inquiry.  *See Bratcher v. Navient Solutions, Inc.*, 2017 WL 895739 (M.D. Fla. Mar. 2, 2017) (allowing discovery of other complaints involving named defendant).  Those cases provide no guidance.

Plaintiff relies on *Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019), for the proposition that treble damages can be awarded when TCPA claims are based on vicarious liability.  But it is clear from the court's discussion in *Krakauer* that the evidence presented related specifically to the sales entity for the defendant that actually called the plaintiff.  The court noted the evidence of "the many occasions on which Dish noted SSN's noncompliance and failed to act" and further explained that, "[g]iven the tens of thousands of violative calls SSN made in a span of just over a year, even a cursory investigation or monitoring effort by Dish would have uncovered the violations."  *Id.* at 662.  Nowhere does the court rely on evidence of alleged violations committed by third party entities unrelated to the calls to the plaintiff.  Plaintiff also cites to *Monitronics* to suggest that complaints related to other third parties are relevant to the issue of treble damages, but, as explained above, the facts in *Monitronics* are distinguishable, and it offers no guidance under the facts here.

---

[10] This standard was also more recently applied in the Northern District of Texas in *Hunsinger v. Dynata LLC*, 2023 WL 2377481, *10 (N.D. Tex. Feb. 7, 2023).  A review of decisions from the Fifth Circuit did not identify any opinion addressing this standard.

This is not a case where Transamerica is alleged to have directly made any calls to Plaintiff, nor does Transamerica hire vendors to make calls on its behalf.  Instead, it is a case where an independent insurance producer allegedly bought leads from a lead generator that allegedly called Plaintiff.  Transamerica has no prior complaint history for Nate Johnson or Leads Guru.  (Altare Aff. ¶ 3, App. 20).  Whether Transamerica may have other complaints of purported TCPA violations involving other insurance producers unrelated to the calls to Plaintiff and who were not working with Leads Guru is completely immaterial.  Such complaints would have no bearing as to whether Transamerica should have known that Nate Johnson was buying leads from Leads Guru that were generated through purportedly unlawful calls.

**C.      Transamerica Properly Responded to the Discovery Requests.**

An analysis of the language used in each discovery request at issue further demonstrates that Transamerica properly objected and responded to each request.

**Request for Production No. 4**

> Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.

Transamerica asserted appropriate objections and further responded by stating that it did not employ or contract with any person or vendor to make outbound calls as part of a call campaign that resulted in a call to Plaintiff.  (Def.'s Resp. to Pl.'s Req. for Prod. No. 4, App. 57-58).  After Plaintiff's counsel requested a conference call to confer about the response, Transamerica supplemented its response by informing Plaintiff that, after a reasonable inquiry, Transamerica had not identified any complaints, formal or informal, involving Nate Johnson, Banuelos Insurance Agency, and/or Leads Guru related to alleged unlawful calls other than the present action.  (Def.'s Supp. Resp. to Pl.'s Req for Prod. No. 4, App, 63-64).

Notably, Request No. 4 asks about "vendors," not insurance agents or insurance producers, nor is "vendor" defined in the preamble to the requests. (Pl.'s Req for Prod., App. 80-87). Accordingly, the request does not seek information about insurance producers like Nate Johnson. Transamerica objected because the request was overly broad, but then provided a response specific to Nate Johnson, Banuelos Insurance Agency, and Leads Guru. Additionally, as set forth in the attached affidavit, Transamerica does not contract with vendors to make telemarketing sales calls. (Schwender Aff. ¶ 6, App. 19). Accordingly, it would not have any relevant documents relating to vendors. Lastly, Request No. 4 has no temporal limitation, nor is it limited to the alleged violation of DNC requirements. These are additional reasons why the request is overly broad. If there were responsive documents, then the breath of the request would almost certainly encompass legal department communications. For this reason, Transamerica asserted an objection based on privilege.

## Interrogatory No. 11

Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

Transamerica asserted appropriate objections and further answered by stating that it had not taken any disciplinary action against any individual related to the calls allegedly made to the Plaintiff. (Def.'s Ans. to Pl.'s Interrog. No. 11, App 71-72). After Plaintiff's counsel requested a conference call to confer about the response, Transamerica supplemented its answer by informing Plaintiff that, after a reasonable inquiry, Transamerica had not identified any complaints, formal or informal, involving Nate Johnson, Banuelos Insurance Agency, and/or Leads Guru related to

alleged unlawful calls other than the present action.  (Def.'s Supp. Ans. to Pl.'s Interrog. No. 11, App. 77-78).

This interrogatory asks about discipline of "any person" with no temporal limitation, nor subject matter limitation.  The only qualifier is that the discipline should relate to allegedly "unlawful or unauthorized outbound calls."  That phrase is not defined.  (Pl.'s Interrogs., App, 80-87).  Allegedly unlawful calls could include, for example, a call that qualifies as harassment or discrimination under state or federal employment laws.  It would of course be unreasonable, unduly burdensome, and not proportional to the needs of the case for Transamerica to respond for all instances of discipline for every type of "unlawful" call that might have occurred at any time in its history.  In light of the overbreadth and ambiguity of this request, Transamerica responded with information specific to the calls made to Plaintiff and to the individuals and entities named in the Amended Complaint.

**CONCLUSION**

Based on the foregoing reasons, Defendant, Transamerica Life Insurance Company, respectfully requests that the Court deny Plaintiff's Motion to Compel.

Respectfully submitted,

*/s/ Cary Slobin*
**CARY SLOBIN**
State Bar No. 00797445
cary.slobin@nelsonmullins.com
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone: 469.484.6100
Facsimile: 469.828.7217

**D. LARRY KRISTINIK**
*Admitted Pro Hac Vice*
larry.kristinik@nelsonmullins.com

16

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
1320 Main Street, 16th Floor
Columbia, South Carolina 29201
Telephone: 803.255.9531
Facsimile: 803.256.7500

**ATTORNEYS FOR  TRANSAMERICA LIFE
INSURANCE COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accord with the Federal Rules of Civil Procedure on this 21st of November 2024.

*/s/ Cary Slobin*