## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KELLY PINN, individually and on behalf of all others similarly situated, | Case No. 4:24-cv-266-P |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| TRANSAMERICA LIFE INSURANCE COMPANY, NATHAN JOHNSON, AND BANUELOS INSURANCE AGENCY LLC D/B/A LEADS GURU | |
| Defendants. | |

### PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Kelly Pinn ("Ms. Pinn"), by her undersigned counsel, for this class action complaint against Defendants Transamerica Life Insurance Company, Nathan Johnson and Banuelos Insurance Agency LLC d/b/a Leads Guru, as well as their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between

1

'[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)."
Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

      2.     "[T]he law opted for a consumer-driven process that would allow objecting
individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations
was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal
government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry
stands out as a model of clarity. It means what it says. If a person wishes to no longer receive
telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone
solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an
abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . .
initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is
on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either
monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a
straightforward provision designed to achieve a straightforward result. Congress enacted the law
to protect against invasions of privacy that were harming people. The law empowers each person
to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply,
the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an
intrusion upon their domestic peace." *Id*. at 649-50.

      3.     Plaintiff, individually and as class representative for all others similarly situated,
brings this action against Defendants for violations of the Telephone Consumer Protection Act,
47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not
Call Registry, including her own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.    PARTIES

5. Plaintiff Pinn is an individual who resides in the Northern District of Texas.

6. Defendant Transamerica Life Insurance Company is an Iowa-based insurance company that sells its insurance policies nationwide, including in Texas.

7. Defendant Nathan Johnson is a Transamerica life insurance agent that attempted to sell a Transamerica life insurance policy to the Plaintiff and is jointly responsible for the illegal telemarketing complained of.

8. Defendant Banuelos Insurance Agency LLC, which does business as Leads Guru is a California LLC with its principal place of business in California and shares an office with Banuelos Insurance at 2300 Waterloo Rd, Stockton, CA 95205. Transamerica, through its agent, Nathan Johnson hired this defendant to place illegal telemarketing calls on its behalf.

## III.    JURISDICTION AND VENUE

9. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

10. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Court has specific personal jurisdiction over Defendants Transamerica Life Insurance Company, Nathan Johnson, and Banuelos Insurance Agency LLC d/b/a Leads Guru because they directed

their illegal conduct into Texas for the purposes of selling insurance to Texans using illegal robocalls directed to Texas area codes.

11. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent into this District.

## IV. FACTS

### A. The Enactment of the TCPA and its Regulations

12. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.      Unsolicited Telemarketing to Plaintiff**

17.      Plaintiff Pinn is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18.      Plaintiff Pinn's telephone number, (817) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

19.      Plaintiff Pinn uses the telephone number for her own personal, residential, and household needs and reasons.

20.      Plaintiff Pinn does not use the number for business reasons or business use.

21.      The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

22.      Plaintiff Pinn's number has been on the National Do Not Call Registry for years since she registered it on the Registry prior to receiving the calls at issue.

23.      Despite that, Ms. Pinn received at least 12 automated calls from the same caller ID 334-402-6166 between August 8, 2023 and August 15, 2023.

24.      The callers all stated that they were calling from the clearly and illegally factiously named "senior benefits" and were calling to sell the Plaintiff a life insurance policy.

25.      During the sixth such call that Plaintiff received on August 9, 2023 at 3:42 PM, the Plaintiff gave the Defendants another telephone number in an effort to attempt to identify the caller and for no other reason.

26.      Despite that, the Plaintiff received another incoming call on the number at 3:49 PM.

27.     This call was followed up with an additional call to the alternate number that the Plaintiff provided during the call at 3:42 PM. During this call, the Plaintiff was transferred to Defendant Nathan Johnson who attempted to sell the Plaintiff a Transamerica life insurance policy. Plaintiff asked for an email and indicated that she would contact Mr. Johnson back if she was interested.

28.     The Plaintiff continued to receive four calls from the same caller ID to her number, not the alternative number, between August 9, 2023 and August 15, 2023.

29.     The Plaintiff stated that she was not interested and to stop calling.

30.     But during one call on August 10, 2023 at 3:18 PM, which was received to the number, the Plaintiff was initially greeted by the fictitious "senior benefits" again and was transferred, again, to Defendant Nate Johnson, from whom the Plaintiff purchased a policy for the sole purpose of identifying the caller who was calling her illegally, whom she had communicated a desire for neither him nor Transamerica to call, and who ignored her do not call requests.

31.     The Plaintiff also received a copy of the proposed policy and application for said policy she was sold during the illegal telemarketing call, together with payment instructions. That proposed policy and application demonstrates it was sent from Transamerica agent and Defendant Nathan Johnson and prominently features the Transamerica logo and trade name throughout the documentation and emails.

32.     Transamerica was notified about Defendant Nathan Johnson's illegal conduct as a result of this litigation and before he was made a Defendant. Shockingly, Transamerica did not terminate, fire, or discipline Johnson, not even as a result of this litigation.

33. None of the aforementioned Defendants are registered as telephone solicitors with the Texas Secretary of State.

34. The Plaintiff thereafter undertook an investigation by contacting Transamerica to determine why she was receiving illegal telemarketing calls.

35. In response, Transamerica went into full on panic and damage control mode, and their story kept changing.

36. Ultimately, Transamerica's story, as confirmed through correspondence which was not marked under Rule 408, was that Defendant Nathan Johnson, its licensed and authorized insurance agent, hired a lead generation company, Defendant Leads Guru, to make the calls.

37. In an effort to deflect blame from Defendant Leads Guru, whom Transamerica tellingly did not deny was authorized to act on its behalf, it stated that Leads Guru acted through an individual named "Mo" at Banuelos Insurance, whom it contended was not a Transamerica agent or authorized to sell Transamerica policies.

38. Upon information and belief, this Individual named "Mo" is Leads Guru's owner, Mohammad Islam.

39. Transamerica also hurriedly tried to pick the Plaintiff off by sending her a proposed, non-Rule 408 settlement agreement purporting to release Transamerica and Nathan Johnson for $1,000. Plaintiff, of course, did not sign or accept this agreement.

40. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

41.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

42.     The FCC has instructed that sellers such as Transamerica may not avoid liability by hiding behind third party agents like Defendant Nathan Johnson or outsourcing telemarketing to third parties, such as Leads Guru:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

43.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

44.     Transamerica is liable for Defendant Nathan Johnson's conduct and telemarketing calls placed by Leads Guru and transferred to Transamerica and its agents to generate customers for Transamerica and its agents, including the Plaintiff.

45.     Indeed, Transamerica's relationship with Defendant Johnson contains numerous hallmarks of agency.

46.     For example, prior to this suit, Transamerica attempted to act as principal on Mr. Johnson's behalf by attempting to settle with Plaintiff for actions it now claims were committed without agency, without its knowledge, consent, or authority, and which they now disclaim liability.

47.     Moreover, with full knowledge that Mr. Johnson was violating multiple parts of his Producer Agreement with Transamerica, together with applicable addenda, including, but not limited to, (1) failing to communicate Do Not Call requests and complaints to Transamerica, (2) continuing to contact Plaintiff after both he and Transamerica were placed on notice of complaints of the illegal conduct complained of, (3) failing to comply with all applicable laws and regulations, including obtaining the appropriate licenses under Texas law to conduct telemarketing, (4) representing to the public, including the Plaintiff, that he was a Transamerica employee, and (5) advertising Transamerica without Transamerica's written consent, Transamerica did nothing.

48.     Transamerica thus had full knowledge of Mr. Johnson's illegal conduct, multiple material breaches of his producer agreement, and did not terminate or discipline him, thus implicitly ratifying his actions and endorsing his illegal behavior.

49.     The aforementioned facts also demonstrate that Transamerica failed to supervise Mr. Johnson or enforce his compliance with applicable laws and regulations, in blatant contravention of its own representations and warranties in its producer agreement with Mr. Johnson.

50.     Transamerica could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by requiring its agents to report do not call requests and

9

forbidding its agents from using other than approved lead generation sources like Leads Guru, but it did not.

51.     Transamerica was interested in hiring agents to sell its products and services, who would in turn hire lead generators that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

52.     To do so, Johnson hired Leads Guru to orchestrate an *en masse* telemarketing campaign.

53.     Transamerica controlled the day-to-day activities of Johnson and Leads Guru by providing the specific criteria for the leads it would accept and required its agents, including Johnson, to adhere to those criteria, which should thereafter have been passed on to Leads Guru.

54.     For example, the calls Plaintiff received demonstrate that Transamerica, through Johnson, required its vendor to use the same caller ID but disguise itself as the illegal and fictitiously named "senior benefits" such as to avoid ill will toward Defendant's brand or directed at its agents. Indeed, Transamerica's Agreement with Johnson explicitly forbids advertising using the Transamerica name without the consent of Transamerica.

55.     Johnson also instructed Leads Guru to and personally attempted to salvage potentially interested customers by incessantly calling them again and again, and ignoring repeated do not call requests, until such point as they confirmed that the buyer applied for, bought, signed, and paid for a policy.

56.     Defendants did so despite numerous explicit indications that the Plaintiff was not interested and did not want any further calls.

57.     As such, Transamerica and Johnson controlled the content of Leads Guru's telemarketing.

58.     Plaintiff's multiple requests not to be called should have been communicated both to Transamerica and Leads Guru, but were not.

59.     Leads Guru, likewise, could and should have communicated Plaintiff's multiple requests not to be called to Transamerica and Mr. Johnson, but did not.

60.     Finally, Transamerica could have terminated Leads Guru and Johnson.

61.     It did not.

62.     By virtue of identifying the leads that they would accept and directing the conduct and other indicia of the calls at issue described above, Transamerica directed Johnson and the content of the communications that Leads Guru would use in their calling.

63.     A reasonable seller like Transamerica whose telemarketers and agents are making calls would investigate into the reasons why their agents and telemarketers would be calling numbers on the National Do Not Call Registry and, moreover, individuals who already stated that they no longer wished to receive calls from Transamerica, Johnson, or Leads Guru.

64.     Indeed, Transamerica could have investigated if the transfers it received or the policies it sold were on the National Do Not Call Registry.

65.     It did not.

66.     Transamerica hired Johnson and Leads Guru without a proper investigation and did not terminate either of them when they were informed of Johnson and Leads Guru's illegal calling conduct.

67.     As such, they knowingly ratified Johnson and Leads Guru's conduct.

68.     Transamerica also ratified Johnson and Leads Guru's conduct because, with knowledge of Plaintiff's complaints against Transamerica and do not call requests to Johnson, they accepted the Plaintiff's lead and ultimately sold the Plaintiff a policy.

11

69.     Transamerica accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her after she made clear she did not want the calls.

70.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

71.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

72.     Plaintiff never provided her consent or requested these calls.

73.     The aforementioned calls to the Plaintiff were unwanted.

74.     The calls were non-consensual encounters.

75.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.     CLASS ACTION ALLEGATIONS

76.     <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Leads Guru, Johnson or Transamerica, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

77.     Excluded from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

78.     The Class, as defined above, is identifiable through telephone records and telephone number databases.

79.     The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

80.     Individual joinder of these persons is impracticable.

81.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

82.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

83.     Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

84.     This class action complaint seeks injunctive relief and money damages.

85.     There are numerous questions of law and fact common to Plaintiffs and members of the Class. These common questions of law and fact include, but are not limited to, the following:

        a.     Whether Transamerica is vicariously liable for the actions of Leads Guru, and the corresponding liability as between them;

13

b.      whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

c.      whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

d.      whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

86.      Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

87.      Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

88.      Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

89.      A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for

violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

90.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

<b><u>FIRST CAUSE OF ACTION</u></b><br>
<b>Telephone Consumer Protection Act</b><br>
<b>Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)</b><br>
<b>(On Behalf of Plaintiff and the National Do Not Call Registry Class)</b>

91.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

92.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

93.     Defendants' violations were negligent, willful, or knowing.

94.     As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

95.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.     An award to Plaintiff and the Class of damages, as allowed by law; and

F.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.     DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

16

RESPECTFULLY SUBMITTED AND DATED this August 29, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

Docusign Envelope ID: 10D2EF46-CA49-44EE-9FA2-65CE976EE525

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KELLY PINN, individually and on behalf of herself and others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 4:24-cv-00266-P** |
| **v.** | ) ) ) | |
| **TRANSAMERICA LIFE INSURANCE COMPANY, NATHAN JOHNSON, AND BANUELOS INSURANCE AGENCY LLC D/B/A LEADS GURU,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**DECLARATION OF GREGORY SCHWENDER**

I, Gregory Schwender, declare under penalty of perjury that I have personal knowledge of the following statements and that the statements are true and correct to the best of my knowledge and belief, state:

1.      I am over the age of eighteen (18) years, and I am competent to attest to the facts herein.

2.      I serve as the Supervision & Change Management with Transamerica Life Insurance Company ("Transamerica").  I have served in this capacity for Transamerica for the past seven (7) years, and I have knowledge regarding Transamerica's appointed insurance producers, vendor relationships, relating to alleged violations of the Telephone Consumer Protection Act ("TCPA"), including alleged violations of Do Not Call registry restrictions.  My work address is Wills Wharf, 1201 Wills Street, Baltimore, MD 21231.

3.      Nate Johnson is an appointed producer for Transamerica.  As set forth in the agreement with Mr. Johnson, he is an independent contractor.  Mr. Johnson is an appointed

18

producer in the state of Texas authorized to represent a number of different life insurance companies in addition to Transamerica.

4.     In the United States, Transamerica has over three thousand (3,000) appointed producers who are independent contractors.  The vast majority of these producers are appointed as producers by other life insurance companies.

5.     The independent contractor agreements between Transamerica and its appointed insurance producers do not require that the insurance producers make telemarketing calls for the purpose of soliciting the sale of life insurance for Transamerica.

6.     Transamerica does not contract with Leads Guru or any other vendor or lead generator to make outbound calls to consumers for the purpose of soliciting the sales of life insurance.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 20, 2024.

Signed by:

Greg Schwender

95B3228D6697481...

Gregory Schwender

Docusign Envelope ID: 69DCF410-80E1-4EE1-A619-FDAA2BA70555

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **KELLY PINN, individually and on behalf of herself and others similarly situated,** ) ) ) ) | |
| ) | **Civil Action No. 4:24-cv-00266-P** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **TRANSAMERICA LIFE INSURANCE COMPANY, NATHAN JOHNSON, AND BANUELOS INSURANCE AGENCY LLC D/B/A LEADS GURU,** ) ) ) ) | |
| ) | |
| **Defendants.** ) | |

### DECLARATION OF JOE ALTARE

I, Joe Altare, declare under penalty of perjury that I have personal knowledge of the following statements and that the statements are true and correct to the best of my knowledge and belief, state:

1.      I am over the age of eighteen (18) years, and I am competent to attest to the facts herein.

2.      I serve as the Compliance Manager with Transamerica Life Insurance Company ("Transamerica"). I have served in this capacity for Transamerica for the past one (1) year, and I have knowledge regarding Transamerica's formal and informal complaints relating to alleged violations of the Telephone Consumer Protection Act ("TCPA"), including alleged violations of Do Not Call registry restrictions. My work address is 6400 C Street SW, Cedar Rapids, Iowa 52499.

3.      Transamerica has conducted a search for complaints of violations of the TCPA, including violations involving the alleged failure to adhere to Do Not Call registry restrictions,

that involved Nate Johnson, Leads Guru, or Banuelos Insurance Agency.  During this search, no such complaints were identified other than the complaint involving Kelly Pinn.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 20, 2024.

Signed by:

*Joe Altare*

39825D99725B444...

Joe Altare

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

      Plaintiff,

v.                                            CASE NO. 5:11-CV-90

MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and
UTC FIRE & SECURITY AMERICAS CORPORATION, INC.,

      Defendants.

### ANSWER, DEFENSES AND JURY DEMAND
### OF MONITRONICS INTERNATIONAL, INC., TO
### PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

Now comes defendant, Monitronics International, Inc. ("Monitronics"), by and

through counsel, and makes its Answer, Defenses and Jury Demand to Plaintiff's Third

Amended Class Action Complaint.

### ANSWER

1.    In response to the "Preliminary Statement" set forth at the beginning of the Third

Amended Class Action Complaint, Monitronics states that the first three sentences purport to

state legal conclusions and Plaintiff's characterizations of the Telephone Consumer Protection

Act ("TCPA"), together with related federal regulations, to which no response is required.  To

the extent a response to the first three sentences is deemed required, Monitronics affirmatively

alleges that the statutory provisions and regulatory provisions cited therein speak for themselves

and denies any and all allegations inconsistent therewith.  Monitronics denies each and every

allegation contained in the remainder of Paragraph 1 to the extent directed to it, and denies

22

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1.

## RESPONSE TO "PARTIES"

2.　　Upon information and belief, Monitronics admits the allegations contained in Paragraph 2.

3.　　The allegations contained in Paragraph 3 are directed to a party other than Monitronics such that no response is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph upon information and belief.

4.　　Monitronics admits the allegations contained in Paragraph 4.

5.　　The allegations contained in Paragraph 5 are directed to a party other than Monitronics such that no response is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph upon information and belief.

6.　　The allegations contained in Paragraph 6 are directed to a party other than Monitronics such that no response is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph upon information and belieF.

7.　　The allegations contained in Paragraph 7 are directed to a party other than Monitronics such that no response is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph upon information and belief.

8.    Paragraph 8 purports to state legal conclusions to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

9.    Paragraph 9 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

## RESPONSE TO "THE LEGAL BASIS FOR THE COMPLAINT"

10.    Paragraph 10 purports to state legal conclusions and Plaintiff's characterizations of the TCPA, to which no response is required.  To the extent a response is deemed required, Monitronics affirmatively alleges that the statutory provisions cited therein speak for themselves and denies any and all allegations inconsistent therewith.

11.    Paragraph 11 purports to state legal conclusions and Plaintiff's characterizations of the TCPA and 15 U.S.C. § 6101-6108, together with related federal regulations, to which no response is required.  To the extent a response is deemed required, Monitronics affirmatively alleges that the statutory provisions and regulatory provisions cited therein speak for themselves and denies any and all allegations inconsistent therewith.

12.    Paragraph 12 purports to state legal conclusions and Plaintiff's characterizations of the TCPA, to which no response is required.  To the extent a response is deemed required,

3

Monitronics affirmatively alleges that the statutory provisions and regulatory provisions cited therein speak for themselves and denies any and all allegations inconsistent therewith.

13.   Paragraph 13 purports to state legal conclusions and Plaintiff's characterizations of the TCPA, to which no response is required.   To the extent a response is deemed required, Monitronics affirmatively alleges that the regulatory provision cited therein speaks for itself and denies any and all allegations inconsistent therewith.

14.   Paragraph 14 purports to state legal conclusions and Plaintiff's characterizations of certain regulatory provisions, to which no response is required.   To the extent a response is deemed required, Monitronics affirmatively alleges that the regulatory provision cited therein speaks for itself and denies any and all allegations inconsistent therewith.

15.   In response to the allegations contained in Paragraph 15, Monitronics admits Plaintiff never gave it written consent to call her and, answering further, affirmatively states that it never did call her.   With respect to the remaining allegations contained in Paragraph 15, Monitronics denies knowledge or information sufficient to form a belief as to their truth or falsity.

16.   Paragraph 16 purports to state legal conclusions and Plaintiff's characterizations of the TCPA, to which no response is required.   To the extent a response is deemed required, Monitronics affirmatively alleges that the statute cited therein speak for themselves and denies any and all allegations inconsistent therewith.

17.   Paragraph 17 purports to state legal conclusions and Plaintiff's characterizations of an FCC statement, to which no response is required.   To the extent a response is deemed

required, Monitronics affirmatively alleges that the applicable rules speak for themselves and denies any and all allegations inconsistent therewith.

18.     Paragraph 18 purports to state legal conclusions and Plaintiff's characterizations of FCC statements, to which no response is required.   To the extent a response is deemed required, Monitronics affirmatively alleges that the applicable rules speak for themselves and denies any and all allegations inconsistent therewith.

19.     To the extent Paragraph 19 purports to state legal conclusions and Plaintiff's characterizations of the TCPA and/or FCC statements, no response is required.   Monitronics denies that any of the calls about which plaintiff complains were made by it or on its behalf. Monitronics denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining factual allegations contained in said paragraph.

20.     Monitronics denies each and every allegation contained in Paragraph 20 to the extent applicable to it.

21.     Monitronics denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21.

22.     Monitronics denies as stated each and every allegation contained in Paragraph 22.

23.     Monitronics denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23.

24.     In response to the allegations contained in Paragraph 24, Monitronics admits that VMS is an "authorized dealer" for it as that phrase is used in its agreements with VMS, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in the first sentence of Paragraph 22.   Monitronics denies each

5

and every allegation contained in the second sentence of Paragraph 24 to the extent applicable to it.

25.    Monitronics denies each and every allegation contained in Paragraph 25 to the extent applicable to it.

26.    Monitronics denies each and every allegation contained in Paragraph 26 to the extent applicable to it except that Monitronics admits that it does not regularly sell its services directly to consumers and admits that it has "authorized dealers" as that phrase is used in its agreements with those entities.    Monitronics denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

27.    In response to the allegations contained in Paragraph 27, Monitronics admits that VMS relies primarily if not exclusively on telemarketing in connection with the contracts it enters into with its customers and that Monitronics was aware that VMS used telemarketing. Monitronics denies the remaining allegations contained in Paragraph 27 to the extent applicable to it.

28.    Monitronics denies the allegations contained in Paragraph 28 to the extent applicable to it.

29.    In response to the allegations contained in Paragraph 29, Monitronics admits VMS offers to sell to Monitronics some alarm monitoring contracts that it enters into with customers and that Monitronics purchases some of the alarm monitoring contracts offered for sale by VMS. Monitronics further states that the price it pays to purchase the alarm monitoring contracts varies based on a number of factors but that the average price is pays for the contracts it elects to purchase is consistent the amount specified in the unredacted version of the Third

6

Amended Class Action Complaint.  Monitronics denies the remaining allegations contained in Paragraph 29 to the extent applicable to it.

30.    To the extent the allegations contained in the first clause of Paragraph 28 purport to quote from its marketing materials, Monitronics respectfully refers the Court to those materials for their full language and context.  Monitronics denies any allegations contained in said clause which are inconsistent with the language of the materials or their context. Monitronics denies the remaining allegations contained in Paragraph 30.

31.    Monitronics denies the allegations contained in Paragraph 31.

32.    Monitronics denies the allegations contained in Paragraph 32.

33.    The allegations contained in Paragraph 33 are directed to parties other than Monitronics such that no response is required.  To the extent a response is deemed required, Monitronics denies any allegations contained in said paragraph to the extent applicable to it.

34.    The allegations contained in Paragraph 34 are directed to parties other than Monitronics such that no response is required.  To the extent a response is deemed required, Monitronics denies any allegations contained in said paragraph to the extent applicable to it.

35.    Monitronics denies the allegations contained in Paragraph 35 to the extent applicable to it.

36.    Monitronics denies the allegations contained in Paragraph 36 to the extent applicable to it.

37.    Monitronics denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 37.

38.     The first sentence of Paragraph 38 purports to state a legal conclusion to which no response is required.  To the extent a response is deemed required, Monitronics affirmatively alleges that the applicable statutory provisions and regulatory provisions speak for themselves and denies any and all allegations inconsistent therewith.  Monitronics denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second sentence of Paragraph 38.

39.     Monitronics denies each and every allegation contained in Paragraph 39 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

40.     The allegations contained in Paragraph 40 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 40 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

41.     The allegations contained in Paragraph 41 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 41 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

42.     The allegations contained in Paragraph 42 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 42 to the extent

applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

43.     The allegations contained in Paragraph 43 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 43 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

44.     The allegations contained in Paragraph 44 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 44 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

45.     The allegations contained in Paragraph 45 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 45 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

46.     The allegations contained in Paragraph 46 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 46 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

9

47.     The allegations contained in Paragraph 47 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 47 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

48.     The allegations contained in Paragraph 48 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 48 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

49.     The allegations contained in Paragraph 49 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 49 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

50.     The allegations contained in Paragraph 50 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 50 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

51.     Monitronics denies each and every allegation contained in Paragraph 51, including subparts (a) – (k), to the extent applicable to it and denies knowledge or information

10

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph. Answering further, Monitronics affirmatively denies ever making or initiating any calls to any number identified in the complaint as belonging to the plaintiff.

52. The allegations contained in Paragraph 52 appear to be directed to a party other than Monitronics such that no response by it is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 50 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

53. Monitronics denies each and every allegation contained in Paragraph 53 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph. Answering further, Monitronics affirmatively denies every making or initiating any calls to any number identified in the complaint as belonging to the plaintiff.

54. The allegations contained in Paragraph 54 appear to be directed to a party other than Monitronics such that no response by it is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 54 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

55. Monitronics denies each and every allegation contained in Paragraph 55 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

56.     The allegations contained in Paragraph 56 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 56 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

57.     The allegations contained in Paragraph 57 appear to be directed to a party other than Monitronics such that no response by it is required.  To the extent a response is deemed required, Monitronics denies each and every allegation contained in Paragraph 57 to the extent applicable to it and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in said paragraph.

58.     Monitronics admits the allegations contained in Paragraph 58.

59.     Monitronics denies the allegations contained in Paragraph 59.

12

33

## RESPONSE TO "CLASS ACTION ALLEGATIONS"

60.    Monitronics denies each and every allegation contained in Paragraph 60, except admits only that Plaintiff has brought this action individually and that Plaintiff purports to seek relief on behalf of herself and a putative class with respect to Counts One and Two. Monitronics denies that certification of any class or subclass would be appropriate.

61.    Monitronics denies each and every allegation contained in Paragraph 61.

62.    Monitronics denies each and every allegation contained in Paragraph 62 to the extent applicable to it.

63.    Paragraph 63 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass with respect to Counts One and Two would be appropriate.

64.    Paragraph 64 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.

65.    Paragraph 65 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.

66.    Paragraph 66 and each of its subparagraphs purport to state legal conclusions to which no response is required.  To the extent a response is deemed required, Monitronics denies

13

each and every allegation contained in Paragraph 66 and each of its subparagraphs, including, but without limitation, that certification of any class or subclass would be appropriate.

67.     Paragraph 67 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.

68.     Paragraph 68 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.

69.     Paragraph 69 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.

70.     Paragraph 70 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.

71.     Paragraph 71 purports to state a legal conclusion to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.

72.     Monitronics denies each and every allegation contained in Paragraph 72, including but without limitation, that certification of any class or subclass would be appropriate.

## RESPONSE TO "LEGAL CLAIMS"

73.     Monitronics incorporates by reference its prior responses to Paragraphs 1 – 72.

74.     Monitronics denies each and every allegation contained in Paragraph 74 to the extent applicable to it and further denies that any calls referred to in said paragraph were made by it or on its behalf.

75.     Monitronics incorporates by reference its prior responses to Paragraphs 1 – 74.

76.     Monitronics denies each and every allegation contained in Paragraph 76 to the extent applicable to it and further denies that any calls referred to in said paragraph were made by it or on its behalf.

77.     Monitronics incorporates its answers and responses to Paragraphs 1 – 76.

78.     Paragraph 78 purports to state legal conclusions and Plaintiff's characterizations of the TCPA, to which no response is required.  To the extent a response is deemed required, Monitronics affirmatively alleges that the statutory provisions cited therein speak for themselves and denies any and all allegations inconsistent therewith.

79.     Paragraph 79 purports to state a claim for relief to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate.  Monitronics further denies that Plaintiff has sought certification of a class with respect to anything other than Counts One and Two.

15

80.    Monitronics incorporates its answers and responses to Paragraphs 1 – 79.

81.    Monitronics denies each and every allegation contained in Paragraph 81 to the extent applicable to it, denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in said paragraph, and denies that certification of any class or subclass would be appropriate.

82.    Paragraph 82 purports to state a claim for relief to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate

83.    Paragraph 83 purports to state a claim for relief to which no response is required. To the extent a response is deemed required, Monitronics denies each and every allegation contained in said paragraph to the extent applicable to it, including, but without limitation, that certification of any class or subclass would be appropriate. Monitronics further denies that Plaintiff has sought certification of a class with respect to anything other than Counts One and Two.

### RESPONSE TO "RELIEF SOUGHT"

The Prayer for Relief, including paragraphs numbered 1 through 5 therein, does not contain any allegations and therefore no responsive pleading is required. Should a response be deemed required, Monitronics denies each and every allegation in the Prayer for Relief (including paragraphs numbered 1 through 5 therein) to the extent applicable to it, except admits only that Plaintiff purports to demand judgment and certain forms of relief, but denies that there

16

is any legal or factual basis for awarding the requested relief. Monitronics further denies that certification of any class or subclass is appropriate.

Monitronics denies each and every allegation contained in the Third Amended Class Action Complaint not specifically and expressly admitted above.

### DEFENSES

1.      The calls about which Plaintiff complains constitute commercial speech protected by the First Amendment to the United States Constitution and the imposition of liability on Monitronics for such calls would violate its First Amendment rights.

2.      Plaintiff's Third Amended Class Action Complaint fails to state a claim upon which relief can be granted.

3.      Plaintiff has "unclean hands" and is equitably barred from this action.

4.      Plaintiff, by her acts and conduct, has waived any and all claims she has against Monitronics.

5.      Plaintiff lacks standing to assert the claims alleged in the Second Amended Class Action Complaint.

6.      Plaintiff's claims are barred because Monitronics did not engage in willful and/or knowing misconduct.

7.      Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

8.      Plaintiff's claims are barred in whole or in part by the doctrine of laches.

9.      Monitronics asserts the defenses of lack of personal jurisdiction, lack of venue, insufficiency of process, and insufficiency of service of process.

17

10. Monitronics denies making any calls in violation of the TCPA. Monitronics further asserts, to the extent applicable, that the call of which Plaintiff complains - both on her own behalf and on behalf of the members of the putative class she seeks to represent - were invited, expressly consented to, and/or made pursuant to an established business relationship. Monitronics further reserves to itself all defenses available to it under the TCPA.

11. Monitronics denies that the calls of which Plaintiff complains were made on "its behalf" or that it can otherwise be liable for such calls.

12. Aggregation in any form of the types of claims asserted by the Plaintiff and the class Plaintiff purports to seek to represent would violate Monitronics' constitutional rights under the applicable state and federal constitutions.

13. A class action is inappropriate in this matter because the applicable prerequisites are not satisfied for the following reasons:

    a.    The class is not so numerous that the joinder of all members is impracticable.

    b.    There are no questions of law or fact common to the class sufficient to find that the requirements of Rule 23(a)(2) have been met.

    c.    The claims or defenses of the Plaintiff are not typical to the claims or defenses of the class.

    d.    Plaintiff will not fairly and adequately protect the interests of the class.

    e.    The prosecution of separate actions by individual members of the class would not create a risk of either inconsistent or varying adjudications, nor would there be a risk of adjudications with respect to individual members of the class which would be dispositive of the

18

interests of other members not parties to the adjudications or would not substantially impair or impede their ability to protect those interests.

      f.     Monitronics has not acted on grounds generally applicable to the class.

      g.     Questions of law or fact common to the members of the class do not predominate over any questions affecting only individual members, and a class action is not superior to other available methods for the fair and efficient adjudication of the alleged controversy.

14.     To the extent Plaintiff purports to seek certification or a class or classes under Rule 23(b)(2) as intimated in Paragraph 69, her complaint fails to state a claim for which relief may be granted inasmuch as she purports to seek statutory damages on behalf of herself and the class.

15.     The imposition of statutory damages in this action, unrelated to any actual harm caused by the conduct alleged in the Third Amended Class Action Complaint, would violate Monitronics' state and federal constitutional rights, including its rights to procedural and substantive due process.

16.     Plaintiff's claims are barred in whole or in part by the acts and/or omissions of one or more third parties over which Monitronics had no control.

17.     To the extent Monitronics is liable to Plaintiff or the classes she seeks to represent, Monitronics is entitled to indemnification from one or more parties or third parties.

18.     Monitronics asserts the defense of failure to join indispensable parties.

19.     The Federal Communications Commission has ruled there can be no direct liability under the TPCA for calls initiated by third parties.  As Monitronics did not initiate any

19

calls to Plaintiff or to any member of the class she seeks to represent, it cannot be liable under the TPCA.

20.    Any act or ommission of a third party for which Plaintiff seeks to hold Monitronics liable were done without the express or implied authority of Monitronics and outside the scope of any alleged agency relationship such that Monitronics cannot be held liable for such acts or omissions.

21.    Monitronics was not a "seller" as that term is defined in the FCC regulations promulgated pursuant to the TCPA such that it cannot be liable for alleged violations of that statute.

22.    To the extent Plaintiff seeks to impose liability on Monitronics for calls allegedly placed by "agents, lead generators, or affiliated companies" of VMS, Monitronics cannot be liable for such calls because any such alleged calls were not made "on its behalf" as that phrase is used in Third Amended Class Action Complaint.

23.    Monitronics lacks sufficient knowledge of all facts and evidence surrounding this incident and is, therefore, unable to ascertain at this time any additional defenses which Monitronics may have.   Therefore, Monitronics expressly reserves the right to amend this Answer to assert such other defenses as may become apparent subsequent to the filing of this Answer, whether in discovery, at trial, or otherwise.

20

## PRAYER FOR RELIEF

WHEREFORE having fully answered Plaintiff's Third Amended Class Action Complaint, Monitronics prays that this Court dismiss this suit with prejudice and grant such other relief as it deems just and proper.

## JURY DEMAND

Monitronics gives notice of its reliance on Plaintiff's demand for a trial by jury contained in the Third Amended Class Action Complaint.

MONITRONICS INTERNATIONAL, INC.

By: _____
One of its attorneys

Jeffrey A. Holmstrand (#4893)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV  26003
(304) 230-6600

Benjamen S. Dyer
Margaret Carlson
CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX 76201
(940) 484-2236
*Admitted Pro Hac Vice*

21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

     Plaintiff,

vs.                                     CASE NO. 5:11-CV-90

MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and UTC FIRE & SECURITY
AMERICAS CORPORATION, INC.,

     Defendants.

## CERTIFICATE OF SERVICE

     Service of *ANSWER, DEFENSES AND JURY DEMAND OF MONITRONICS*

*INTERNATIONAL, INC., TO PLAINTIFF'S THIRD AMENDED CLASS ACTION*

*COMPLAINT* was had upon the following via the CM/ECF system this 9th day of December,

2013:

                       John W. Barrett
                       Jonathan R. Marshall
                       Bailey & Glasser, LLP
                       209 Capitol Street
                       Charleston, WV 25301

                       Edward A. Broderick
                       Broderick Law, P.C.
                       125 Summer Street, Suite 1030
                       Boston, MA 02110

                       Matthew P. McCue
                       The Law Office of Matthew P. McCue
                       1 South Avenue, 3rd Floor
                       Natick, MA 01760

Gordon H. Copland
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330

Karen Kahle
Kristen L. Andrews Wilson
Steptoe & Johnson, PLLC
Post Office Box 751
Wheeling, WV  26003

Niall A. Paul
Clifford F. Kinney, Jr.
John R. Teare, Jr.
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East
P.O. Box 273
Charleston, WV 25321-0273

Christina S. Terek
Spilman Thomas & Battle, PLLC
1233 Main Street, Suite 4000
P.O. Box 831
Wheeling, WV 26003

MONITRONICS INTERNATIONAL, INC.

By: _____
One of Its attorneys

Jeffrey A. Holmstrand (#4893)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV  26003
(304) 230-6600

Benjamen S. Dyer
Margaret Carlson
CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX 76201
(940) 484-2236
*Admitted Pro Hac Vice*

2

44

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

      Plaintiff,

v.                                  CASE NO. 5:11-CV-90

MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; ALLIANCE SECURITY, INC., and
UTC FIRE & SECURITY AMERICAS CORPORATION, INC.,

      Defendants.

## RESPONSE OF DEFENDANT MONITRONICS INTERNATIONAL, INC., IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Plaintiff in this putative class action asserts she received telemarketing calls which she claims violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227. She asserts these calls were placed by defendant Versatile Marketing Solutions, Inc. ("VMS")[1] allegedly "on behalf of" defendants Monitronics International, Inc. ("Monitronics") and UTC Fire & Security Americas Corporation, Inc. ("UTC") such that those defendants can be vicariously liable for the calls. Her complaint alleges VMS was an "authorized dealer" for Monitronics and UTC. The discovery dispute at issue arises solely from her efforts to obtain discovery related to dealers other than VMS. Because of the limited scope of this case, the motion should be denied.[2]

---

[1]      On November 25, 2013, Plaintiff filed a Third Amended Class Action Complaint (Doc. 208) which among other things added Alliance Security, Inc. ("Alliance"), as an additional defendant. As Plaintiff alleges in that pleading, Alliance is simply the new corporate name of VMS and the pleading collectively refers to the two as VMS. (Doc. 208 at ¶ 7).

[2]      The motion at issue was directed to both Monitronics and UTC and each is entitled to respond. Rather than restate arguments made by UTC in its response (Doc. 209), Monitronics incorporates those arguments here by reference as additional grounds for denying the motion.

1

## BACKGROUND

The currently operative pleading, Plaintiff's Third Amended Class Action Complaint expressly limits its claims to calls made by VMS. (*See e.g.,* Doc. 208 at ¶ 20 – 36). Moreover, it limits the class temporally to those "all persons or entities within the United States who phone numbers were registered on the Do Not Registry, and who, **within the four years prior to the filing of the initial Complaint,** received more than one telemarketing call within any twelve-month period of time **from Defendants VMS or Alliance (or their agents, lead generators, or affiliated companies), on behalf of any of the Defendants promoting their goods or services."** (Doc. 208 at ¶ 63) (emphasis added). Plaintiff further alleges that the "questions of law and fact common to Plaintiff" and the proposed class include:

    a.    Whether VMS, UTC and Monitronics violated the TCPA by engaging in telemarketing in violation of the TCPA;

    b.    Whether the telemarketing calls made to class members by or on behalf of VMS were made on behalf of UTC and Monitronics;

    c.    Whether the telemarketing calls sent to class members by VMS were 'telephone solicitations'; and

    d.    Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of the defendants' actions.

(Doc. 208 at ¶ 66). Plaintiff also alleges that the "actions of VMS, Monitronics and UTC are generally applicable to the classes as a whole and to Plaintiff." (Doc. 208 at 69). There are no claims asserted in this action involving dealers other than VMS.[3]

---

[3]     Monitronics notes that by the time this motion is ripe for consideration, the Judicial Panel On Multidistrict Litigation will have taken under consideration the motion filed by Monitronics for centralization as the argument on that is set for December 5, 2013. Monitronics respectfully urges that the Court await the Panel's decision prior to ruling on the pending motion.

## STANDARD OF REVIEW

Plaintiff cites general standards for the scope of discovery, but omits two critical pieces. First, the discovery must be relevant to the claims at issue.  F.R.Civ.P. 26(b)(1); *McCoy 6 Apts., LLC v. City of Morgantown*, 2011 U.S. Dist. LEXIS 123878 at * 12 (N.D. W. Va. Oct. 25, 2011) (discovery requests not relevant to the issues raised by then-pending claims should be stricken). As this Court has noted, parties are "not entitled to unlimited discovery."  *Mazza v. Quicken Loans, Inc.*, 2013 U.S. Dist. LEXIS 73836 at *7 (N.D.W.Va. May 24, 2013) (*citing  Tooley v. Napolitano*, 556 F.3d 836, 384 U.S. App. D.C. 393 (D.C.Cir. 2009)).

Second, even potentially "relevant" discovery is limited.  The rules specifically state that "All discovery is subject to the limitations of Rule 26(b)(2)(C)."  F.R.Civ.P. 26(b)(1).  This requires the Court to balance the rights of all parties, *id.* at *23, and consider the limitations contained in that rule:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

F.R.Civ.P. 26(b)(2)(C).  Given that Plaintiff has and is conducting discovery directly related to the question of the Defendants' alleged liability for telemarketing conducted by VMS, Plaintiff cannot support the irrelevant and virtually unlimited discovery sought by the requests in dispute.

3

## DISCUSSION

Plaintiff makes three narrow arguments as to why information related to dealers other than VMS should be discoverable. As discussed below, none is persuasive under the applicable rules. Before addressing the individual arguments, however, two points are worth noting and both of which support denying the motion outright.

First, as an overarching proposition, each of the three arguments focuses solely on the supposed relevance of *complaints* about telemarketing conducted by authorized dealers other than VMS at apparently any time. The discovery requests covered by the motion are not limited to telemarketing complaints regarding other dealers and are not even temporally limited to the time period covered by the class allegations (i.e., "within the four years prior to the filing of the initial Complaint"). Plaintiff makes no effort to show why discovery beyond telemarketing complaints or outside the proposed class period would ever be relevant. On that basis alone, the motion as framed should be denied. To the extent the Plaintiff's arguments have effectively narrowed the scope of the requests at issue to telemarketing complaints regarding dealers other than VMS during the proposed class period, the motion should still be denied for the reasons set forth below.

Second, Plaintiff repeatedly relies on provisions of an FCC Declaratory Ruling (and in particular ¶ 46 of the ruling) as the basis for arguing that information about telemarketing complaints unrelated to VMS should be discoverable. *See, e.g.*, Doc 205 at 5, 6, 9, 10 and 11. As Plaintiff frames the issue, "the FCC recently issued a declaratory ruling outlining the circumstances in which sellers like UTC and Monitronics can be vicariously liable for calls placed by third-party marketers like VMS." (Doc. 205 at 5). Monitronics denies being a "seller" under the TCPA such that the Declaratory Ruling is inapplicable to it. As important for purposes

of this argument, however, is the fact that the FCC has itself expressly stated that its statements regarding vicarious liability in Paragraph 46 were no more than "guidance regarding the possible application of pertinent agency principles in the telemarketing context." *See*, Brief for Federal Communications Commission at 18, *DISH Network LLC v. Federal Communications Commission*, (D.C. Cir. 2013) (No. 13-1182).[4]   The FCC further characterized its statements as "non-binding" guidance which "does not determine rights or obligations." *Id.* at 16.  As such, Plaintiff's reliance on the FCC Declaratory Ruling is itself no reason to grant any aspect of the motion.[5]

Turning to the specific arguments raised by Plaintiff as to why telemarketing complaints against dealers other than VMS should be discoverable, each is based on flawed reasoning and is unsupported by the relevant law.  In particular, Plaintiff first speculates that if the Monitronics (or UTC) only produces information regarding complaints about VMS telemarketing, it is nonetheless "highly likely" that complaints about VMS's telemarketing will stay undiscovered. Second, Plaintiff abandons any pretense of trying to tie the discovery sought to VMS and instead posits a series of questions that have nothing to do with the claims actually alleged in the Complaint.  Finally, Plaintiff essentially argues that information regarding whether Monitronics

---

[4]   The cited action arises from a petition for review filed in the D.C. Circuit by DISH Network LLC from the FCC's Declaratory Ruling.  A copy of the FCC's brief in that matter (with the Certificate of Compliance, Statutory Appendix, and Certificate of Service removed) is attached as Exhibit 1.

[5]   Monitronics previously suggested and continues to believe that  awaiting final resolution of the petition for review before the D.C. Circuit was warranted as that will help outline the ultimate scope and effect (if any) of the FCC's Declaratory Ruling on private civil actions such as the one before this Court.  Denying the pending motion without prejudice makes some sense in light of the heavy reliance Plaintiff puts on the supposed effect of that ruling.  If the Court is not inclined to deny on that basis, however, the fact that the FCC itself considers its guidance to be non-binding and not determinative of rights or obligations is directly relevant to whether the motion should be granted.

or UTC took disciplinary action against other dealers could be relevant under the non-binding

FCC guidance.  These arguments are addressed in turn.

## I.   PLAINTIFF'S PRIMARY ARGUMENT IS AT BEST SPECULATIVE AND DOES NOT SUPPORT THE RELIEF SOUGHT.

Plaintiff devotes the bulk of the briefing (Doc. 205 at 5 - 9) to speculating that without

allowing discovery of telemarketing complaints against dealers other than VMS, complaints

against VMS will be somehow missed.  This argument fails for several reasons.

First, the argument makes no sense where the complaint involves another identified

dealer.  In those instances, the supposed concern – that unknown complaints might actually

involve VMS – does not apply at all.   In those instances, the complaints have nothing to do with

VMS and would shed no light on VMS's alleged misconduct for which Plaintiff is attempting to

hold Monitronics liable.

Second, even where the dealer is not identified, the information is by definition irrelevant

to the claims asserted.  Plaintiff asserts Monitronics and UTC can be liable under "theories of

vicarious liability and ratification" which are explicitly tied to what VMS did or did not do and

the knowledge the defendants had of VMS's activities.  Complaints about unidentified dealers

are not evidence of what Monitronics might know or not know about VMS.  *See, e.g., Mazza v.*

*Quicken Loans, Inc.*, 2013 U.S. Dist. LEXIS 73836 at 16 (N.D. W. Va. May 24, 2013) (as there

"is no indication that Plaintiff's loans were valued by appraisers and/or valuation services other

than the computerized valuation method", requests related to others "appears to be more of a

'fishing expedition' than a search for evidence relevant to the claims being made."); *Brown v.*

*Partipilo*, 2011 U.S. Dist. LEXIS 44412 at *21 – 24 (N.D. W. Va. Apr. 22, 2011) (Court

"will not condone a 'fishing expedition' using massive dragged nets" when plaintiffs fail "to first bait a few well placed hooks to seek specific information that may be used to obtain relevant information essential to the proof of required issues at trial."). Even under a broad definition of relevance, the information sought here is not pertinent to the claims asserted.

Third, as noted above, the discovery requests are not limited in any fashion to complaints about telemarketing made during the putative class period. Plaintiff's argument based on the supposed relevancy of complaints involving other dealers does not support the broader relief Plaintiff actually seeks in the motion.

## II.    COMPLAINTS ABOUT OTHER DEALERS ARE NOT RELEVANT TO PLAINTIFFS' CLAIMS AGAINST VMS.

Plaintiff devotes three paragraphs to the argument that "complaints about other dealers" are relevant to whether "UTC's and Monitronics' alleged TCPA violations were willful or knowing." (Doc 205 at 9). This argument also misses the mark. Plaintiff asserts the claims against Monitronics (and UTC) are based on alleged vicarious liability and/or ratification of VMS's actions. Plaintiff does not assert and offers no suggestion that Monitronics violated the TCPA directly. There is nothing in Plaintiffs' memorandum that purports to tie complaints against other dealers to VMS. In addition, for the same reasons set forth above and based on the same authority, Plaintiff's second argument – related solely to "complaints about other dealers" – does not support the relief actually sought in the motion.

## III.   DISCOVERY RELATED TO COMPLAINTS ABOUT DEALERS OTHER THAN VMS IS NOT RELEVANT TO PLAINTIFF'S VICARIOUS LIABILITY THEORY.

Plaintiff devotes the last three substantive paragraphs of the memorandum rehashing arguments made in the first section to assert that the FCC Declaratory Ruling provides authority for discovery related to "complaint and investigatory files with respect to dealers other than

7

VMS." (Doc 205 at 10).[6]  The premise for the argument is the speculation that if Monitronics

took action with respect to some dealers who violated the TCPA, but did not do so with respect

to VMS, such action would be relevant to Plaintiff's vicarious liability claims under the FCC

Declaratory Ruling. This argument also fails to support the relief sought.

First, as noted above, the FCC "guidance" is admittedly non-binding and does not

determine a party's "rights or obligations." Plaintiff cites no authority outside the FCC ruling for

the position that even the discovery described in the argument (as opposed to the broader relief

sought in the motion) is potentially relevant.

---

[6]    Monitronics previously answered a discovery request directed to it in 2011
regarding VMS and telemarketing complaints:

> Interrogatory No. 3:  Please describe in detail all actions you took to
> investigate allegations of illegal telemarketing conducted by VMS, and include in
> your answer any discipline, warnings, sanctions or other actions you took as a
> result of your investigation.

> Answer:

> OBJECTION:   Monitronics objects to this Interrogatory as being beyond
> the scope of initial discovery as contemplated by Judge Keeley at the hearing held
> on August 26, 2011.

> Subject to and notwithstanding this objection, Monitronics states that with
> the exception of the complaint made by plaintiff Diana Mey in this case,
> Monitronics is aware of fewer than ten other complaints regarding VMS's
> telemarketing.  In response, Monitronics advised VMS of the substance of the
> complaints and asked it to address them as necessary.  In addition, Robert
> Sherman verbally reminded Jay Gotra sometime within the last year of the
> requirement in VMS's agreement with Monitronics to comply with all federal and
> state laws.  After this lawsuit was filed, Monitronics sent a letter to VMS again
> reminding it of its obligations under its agreement with Monitronics and
> demanding indemnification pursuant to that agreement.

Objections, Answers And Responses Of Defendant Monitronics International, Inc. To Plaintiff's
Interrogatories And Requests For Production Of Documents To Defendant Monitronics
International, Inc., Response to Interrogatory No. 3, served on November 2, 2011.  The response
is attached as Exhibit 2.

Second, Plaintiff fails to cite any authority for even the speculative basis posited for seeking the discovery.  The issue before the Court – even under the Plaintiff's vicarious liability theory – is what actions Monitronics took with respect to VMS based on its knowledge of VMS's actions.  That has already been the subject of both written discovery and the corporate deposition of Monitronics.  Information about dealers with which Plaintiff does not make a claim is simply irrelevant including the limited information described in the argument (again as opposed to the broader relief sought in the motion).

Finally, like Plaintiff's other arguments, the discovery at issue is not limited to the circumstances set forth in the argument.  Plaintiff did not limit the requests to the circumstances outlined in the argument or temporally to the putative class period.  This is also grounds for denying the motion.

## CONCLUSION

For the reasons set forth above, as well as for the reasons set forth in UTC's response, Plaintiff's motion to compel should be denied.

MONITRONICS INTERNATIONAL, INC.

By: _____
One of its attorneys

Jeffrey A. Holmstrand (#4893)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV  26003
(304) 230-6600

Benjamen S. Dyer (*admitted pro hac vice*)
Margaret Carlson (*admitted pro hac vice*)
CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX 76201
(940) 484-2236

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

      Plaintiff,

vs.                                           CASE NO. 5:11-CV-90

MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and UTC FIRE & SECURITY
AMERICAS CORPORATION, INC.,

      Defendants.

## CERTIFICATE OF SERVICE

Service of *RESPONSE OF DEFENDANT MONITRONICS INTERNATIONAL, INC.*

*IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL* was had upon the following via

the CM/ECF system this 3rd day of December, 2013:

> John W. Barrett
> Jonathan R. Marshall
> Bailey & Glasser, LLP
> 209 Capitol Street
> Charleston, WV 25301
>
> Edward A. Broderick
> Broderick Law, P.C.
> 125 Summer Street, Suite 1030
> Boston, MA  02110
>
> Matthew P. McCue
> The Law Office of Matthew P. McCue
> 1 South Avenue, 3[rd] Floor
> Natick, MA 01760
>
> Gordon H. Copland
> Steptoe & Johnson PLLC
> 400 White Oaks Boulevard
> Bridgeport, WV 26330

Karen Kahle
Kristen L. Andrews Wilson
Steptoe & Johnson, PLLC
Post Office Box 751
Wheeling, WV 26003

Niall A. Paul
Clifford F. Kinney, Jr.
John R. Teare, Jr.
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East
P.O. Box 273
Charleston, WV 25321-0273

Christina S. Terek
Spilman Thomas & Battle, PLLC
1233 Main Street, Suite 4000
P.O. Box 831
Wheeling, WV 26003

MONITRONICS INTERNATIONAL. INC.

By: _____
One of its attorneys

Jeffrey A. Holmstrand (#4893)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV 26003
(304) 230-6600

Benjamen S. Dyer
Margaret Carlson
CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX 76201
(940) 484-2236
*Admitted Pro Hac Vice*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| KELLY PINN, on behalf of herself and others similarly situated, | : | CIVIL ACTION FILE NO. 4:24-cv-266-P |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRANSAMERICA LIFE INSURANCE COMPANY AND LEADS GURU LLC | : | |
| | : | |
| Defendant. | : | |
| _____ | / | |

**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S**
**RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Transamerica Life Insurance Company ("Transamerica") hereby responds and objects to Plaintiff's Requests for Production as follows:

**GENERAL OBJECTIONS**

The following general objections apply to the Interrogatories and are incorporated by this reference into each and every objection hereinafter stated as if set forth in full therein.

1.     Transamerica objects to the Requests to the extent they purport to impose requirements and discovery obligations other than or beyond those set forth in Rules 26(b) and 34 of the Federal Rules of Civil Procedure, and any other applicable local rules of this Court.

2.     Transamerica objects to these Requests to the extent they call for information that: (i) is protected by any privilege or protection, including, without limitation, attorney-client privilege, attorney work product doctrine and/or common interest and joint defense doctrine; (ii) was prepared in anticipation of litigation; (iii) is a trade secret or is of proprietary or competitively

1

sensitive nature; and/or (iv) is otherwise protected from disclosure under the law. To the extent that the Requests may be construed as seeking such privileged or protected information, Transamerica hereby claims such privilege and invokes such privilege. Inadvertent disclosure of any such information is not intended and shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, or with respect to the subject matter thereof.

3.      Transamerica objects to the Requests to the extent they seek information that is not within Transamerica's possession, custody, or control.

4.      Transamerica objects to the Requests to the extent they seek information that is already in the possession, custody, or control of Plaintiff, equally available to Plaintiff, or obtainable from another source that is more convenient, less burdensome, less expensive, or publicly available.

5.      Transamerica objects to the Requests to the extent they are overbroad, unduly burdensome, and seek information that is neither relevant to the subject matter of the pending proceedings nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these General Objections, Transamerica provides the following responses.  Transamerica expects to make its initial document production by no later than June 19, 2024.  Some of the documents will be produced subject to the Confidentiality Agreement entered into between Plaintiff and Transamerica.

## RESPONSES TO DOCUMENT REQUESTS

1.      Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

2

4.      Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.

**RESPONSE:**  Transamerica objects on the grounds that this request is overly broad and seeks documents not relevant to the claims or defenses.  Transamerica also objects because the phrase "outbound calls" is undefined and is vague and ambiguous.  Transamerica further objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege.  Subject to and without waiving these objections, Transamerica states that it did not employ or contract with any person or vendor to make outbound calls as part of a call campaign that resulted in a call to the Plaintiff.

5.      Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, [sic] but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

**RESPONSE:**  Transamerica objects on the grounds that this request is unduly burdensome, overly broad, and seeks documents not relevant to the claims or defenses.  The request has no temporal, geographic, or subject matter limitations.  Transamerica also objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege.  Subject to and without waiving these objections, Transamerica states that it will produce all non-privileged documents relating to the Plaintiff's complaint.  Transamerica limited the scope of its search for responsive documents to those documents relating to Plaintiff and existing or created before the date the Complaint was filed in this action.

  e)  identifying information for the recipient; and

  f)  any other information stored by the call detail records.

  **<u>RESPONSE:</u>**  Transamerica objects on the grounds that this request is overly broad and seeks documents not relevant to the claims or defenses.  Subject to and without waiving the above objections, Transamerica states that it is not in possession of any documents responsive to this request other than documents containing information obtained from Plaintiff.

  18.  All communications with any third party concerning this litigation other than your attorney.

  **<u>RESPONSE:</u>**  Transamerica objects on the grounds that this request is overly broad and seeks documents not relevant to the claims or defenses.  Transamerica further objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege.

            Respectfully submitted,

            */s/ Katherine Freeman*_____
            **CARY SLOBIN**
            State Bar No. 00797445
            cary.slobin@nelsonmullins.com
            **KATHERINE (KATE) FREEMAN**
            State Bar No. 24109889
            kate.freeman@nelsonmullins.com
            **NELSON MULLINS RILEY &**
            **SCARBOROUGH LLP**
            5830 Granite Parkway, Suite 1000
            Plano, Texas 75024
            Telephone: 469.484.6100
            Facsimile: 469.828.7217

            **D. LARRY KRISTINIK**
            *Admitted Pro Hac Vice*
            larry.kristinik@nelsonmullins.com
            **NELSON MULLINS RILEY &**

9

**SCARBOROUGH LLP**
1320 Main Street, 16th Floor
Columbia, South Carolina 29201
Telephone: 803.255.9531
Facsimile: 803.256.7500

**ATTORNEYS FOR  TRANSAMERICA    LIFE
INSURANCE COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accord with the Federal Rules of Civil Procedure on this 5th of June 2024.


*/s/ Katherine Freeman___ __*

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| KELLY PINN, on behalf of herself and others similarly situated, | : : : | CIVIL ACTION FILE NO. 4:24-cv-266-P |
| Plaintiff, | : : : | |
| v. | : : : | |
| TRANSAMERICA LIFE INSURANCE COMPANY, NATHAN JOHNSON, AND BANUELOS INSURANCE AGENCY LLC D/B/A LEADS GURU, | : : : : : | |
| Defendant. | : : | |
| _____/ | | |

**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S**
**SUPPLEMENTAL RESPONSES TO PLAINTIFF'S**
**FIRST REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Transamerica Life Insurance Company ("Transamerica") hereby provides the following supplemental responses to Plaintiff's Requests for Production as follows:

**GENERAL OBJECTIONS**

The following general objections apply to the Interrogatories and are incorporated by this reference into each and every objection hereinafter stated as if set forth in full therein.

1.    Transamerica objects to the Requests to the extent they purport to impose requirements and discovery obligations other than or beyond those set forth in Rules 26(b) and 34 of the Federal Rules of Civil Procedure, and any other applicable local rules of this Court.

2.    Transamerica objects to these Requests to the extent they call for information that: (i) is protected by any privilege or protection, including, without limitation, attorney-client privilege, attorney work product doctrine and/or common interest and joint defense doctrine; (ii)

was prepared in anticipation of litigation; (iii) is a trade secret or is of proprietary or competitively sensitive nature; and/or (iv) is otherwise protected from disclosure under the law. To the extent that the Requests may be construed as seeking such privileged or protected information, Transamerica hereby claims such privilege and invokes such privilege. Inadvertent disclosure of any such information is not intended and shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, or with respect to the subject matter thereof.

3.      Transamerica objects to the Requests to the extent they seek information that is not within Transamerica's possession, custody, or control.

4.      Transamerica objects to the Requests to the extent they seek information that is already in the possession, custody, or control of Plaintiff, equally available to Plaintiff, or obtainable from another source that is more convenient, less burdensome, less expensive, or publicly available.

5.      Transamerica objects to the Requests to the extent they are overbroad, unduly burdensome, and seek information that is neither relevant to the subject matter of the pending proceedings nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these General Objections, Transamerica provides the following responses.

## SUPPLEMENTAL RESPONSES TO DOCUMENT REQUESTS

1.      Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE:** Transamerica objects to this request to the extent it seeks the production of documents protected from disclosure by the work-product doctrine and/or the common interest

2

privilege.  Subject to and without waiving this objection, Transamerica will produce responsive, non-privileged documents.

2.    Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:** Transamerica objects on the grounds that this request is overly broad and seeks documents not relevant to the claims or defenses.  Transamerica also objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege.  Transamerica further objects to this request on the grounds that the term "contradicting" as used in the request is vague and ambiguous.  Subject to and without waiving these objections, Transamerica will produce responsive, non-privileged documents.

3.    Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into outbound calls made to Plaintiff.

**RESPONSE:** Transamerica objects on the grounds that this request is overly broad and seeks documents not relevant to the claims or defenses.  Transamerica also objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege.  Subject to and without waiving these objections, Transamerica will produce responsive, non-privileged documents.  Transamerica limited the scope of its search for responsive documents to those documents existing or created before the date the Complaint was filed in this action.

4.    Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.

**RESPONSE:** Transamerica objects on the grounds that this request is overly broad and seeks documents not relevant to the claims or defenses. Transamerica also objects because the phrase "outbound calls" is undefined and is vague and ambiguous. Transamerica further objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege. Subject to and without waiving these objections, Transamerica states that it did not employ or contract with any person or vendor to make outbound calls as part of a call campaign that resulted in a call to the Plaintiff.

**SUPPLEMENTAL RESPONSE:** Transamerica further responds by stating that, after conducting a reasonable inquiry for the time period from 2019 to the present, it has not identified any complaints, formal or informal, involving Nate Johnson, Banuelos Insurance Agency, and/or Leads Guru that related to alleged unlawful or unauthorized outbound calls, other than the present action and the informal complaint that the Plaintiff made to Transamerica concerning Nate Johnson.

5.     Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, [sic] but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

**RESPONSE:** Transamerica objects on the grounds that this request is unduly burdensome, overly broad, and seeks documents not relevant to the claims or defenses. The request has no temporal, geographic, or subject matter limitations. Transamerica also objects to the extent that this request seeks documents protected by the attorney-client privilege, the work product doctrine, and/or the common interest privilege. Subject to and without waiving these objections, Transamerica states that it will produce all non-privileged documents relating to the

Respectfully submitted,

/s/ Cary Slobin_____
**CARY SLOBIN**
State Bar No. 00797445
cary.slobin@nelsonmullins.com
**KATHERINE (KATE) FREEMAN**
State Bar No. 24109889
kate.freeman@nelsonmullins.com
**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone: 469.484.6100
Facsimile: 469.828.7217

**D. LARRY KRISTINIK**
*Admitted Pro Hac Vice*
larry.kristinik@nelsonmullins.com
**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
1320 Main Street, 16th Floor
Columbia, South Carolina 29201
Telephone: 803.255.9531
Facsimile: 803.256.7500

**ATTORNEYS FOR TRANSAMERICA LIFE**
**INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accord with the Federal Rules of Civil Procedure on this 10th of September 2024.

/s/ Cary Slobin_____

4871-7031-1645 v.1

17.    Please produce all documents containing any of the following information for each outbound telemarketing call sent by Nate Johnson or by you for leads to Nate Johnson or by any of your vendors to the Plaintiff:

        a)  the date and time;

        b)  the caller ID;

        c)  any recorded message used;

        d)  the result;

        e)  identifying information for the recipient; and

        f)  any other information stored by the call detail records.

**RESPONSE:**


18.    All communications with any third party concerning this litigation other than your attorney.

**RESPONSE:**


Dated: May 6, 2024                Plaintiff,
                                     By her attorney

                                     *s/ Anthony Paronich*
                                     Anthony Paronich
                                     **Paronich Law, P.C.**
                                     350 Lincoln St, Suite 2400
                                     Hingham, MA 02043
                                     Phone: (617) 485-0018
                                     Fax: (508) 318-8100
                                     anthony@paronichlaw.com
                                     *Pro Hac Vice*

                                     Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

On this May 6, 24, the undersigned served the foregoing on counsel for the Defendant

*s/ Anthony Paronich*
Anthony Paronich

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| KELLY PINN, on behalf of herself and others similarly situated, | : | CIVIL ACTION FILE NO. 4:24-cv-266-P |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRANSAMERICA LIFE INSURANCE COMPANY AND LEADS GURU LLC | : | |
| | : | |
| Defendant. | : | |
| _____ | /| |

**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S
RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant, Transamerica Life Insurance Company ("Transamerica"), hereby responds and objects to Plaintiff's Interrogatories as follows:

**<u>GENERAL OBJECTIONS</u>**

The following general objections apply to the Interrogatories and are incorporated by this reference into each and every objection hereinafter stated as if set forth in full therein.

1.      Transamerica objects to the Interrogatories to the extent they purport to impose requirements and discovery obligations other than or beyond those set forth in the applicable Rules 26(b) and 33 of the Federal Rules of Civil Procedure and any other applicable local rules of this Court.  Moreover, Transamerica objects to these Interrogatories to the extent they purport to require it to conduct anything other than a reasonable and diligent search for information responsive to these Interrogatories.

1

2.      Transamerica objects to these Interrogatories to the extent they seek the disclosure of information that: (i) is protected by any privilege or protection, including, without limitation, attorney-client privilege, attorney work product doctrine and/or common interest and joint defense doctrine; (ii) was prepared in anticipation of litigation; (iii) is a trade secret or is of proprietary or competitively sensitive nature; and/or (iv) is otherwise protected from disclosure under the law. To the extent that the Interrogatories may be construed as seeking such privileged or protected information, Transamerica hereby claims such privilege and invokes such privilege.  Inadvertent disclosure of any such information is not intended and shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, or with respect to the subject matter thereof.

3.      Transamerica objects to the Interrogatories to the extent they are not limited by any reasonable time period and, therefore, are overly broad, unduly burdensome, oppressive, and call for information or documents that are neither relevant to the claims, defenses, or subject matter of this case, nor reasonably calculated to lead to the discovery of admissible evidence, or seek information that is no longer in Transamerica's possession, custody, or control.

4.      Transamerica objects to the Interrogatories to the extent that they seek information that is already in the possession, custody, or control of Plaintiff, equally available to Plaintiff, or obtainable from another source that is more convenient, less burdensome, less expensive, or publicly available.

5.      Transamerica objects to the Interrogatories to the extent they are overly broad, are impermissibly vague, and fail to describe the information sought with reasonable particularity. Transamerica further objects to these Interrogatories to the extent they are argumentative, lack

foundation, assume the existence of facts that do not exist or the occurrence of events that did not take place, or incorporate allegations and assertions that are disputed or erroneous.

Subject to and without waiving these General Objections, Defendant responds as follows:

## ANSWERS TO INTERROGATORIES

1.      Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**    Transamerica objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Transamerica also objects because the requested information is not relevant to the claims or defenses.  Subject to and without waiving these objections, Transamerica states that Transamerica's legal department and counsel for Transamerica furnished information used to answer these interrogatories.

2.      Identify all employees or vendors involved in making outbound calls as part of any campaign that contacted the Plaintiff. This includes, but is not limited to, (a) third parties that you contracted with who contacted the Plaintiff (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

**ANSWER:**    Transamerica objects to this interrogatory on the grounds that the undefined terms "vendors" and "any campaign" make the interrogatory vague and ambiguous.  Transamerica further objects on the grounds that the interrogatory is overly broad and seeks information not relevant to the claims or defenses.  Subject to and without waiving these objections, Transamerica states that it did not employ or contract with any person or vendor to make outbound calls as part of a call campaign that resulted in a call to the Plaintiff.

3.      Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

10.      State all facts in support of any affirmative defenses you have raised.

**ANSWER:**  Most of Transamerica's defenses rely on the fact that it had no involvement in the alleged calls to Plaintiff and on the position that Plaintiff cannot meet her burden of establishing the requirements for vicarious liability or certifying the putative class.  Additionally, Transamerica states that the evidence will show that it had no relationship with any person or entity making the alleged calls, that it did not authorize the alleged calls to be made, that it had no knowledge about the alleged calls until Ms. Pinn reached out to Transamerica to complain, that it did not ratify the alleged calls, and that the agent Nate Johnson is an independent contractor. Additional defenses are based on the fact that Plaintiff suffered no injury, that Plaintiff had an established business relationship with one or more persons or entities, that Plaintiff's telephone line is not a residential line, and that Plaintiff made misrepresentations about her intent to purchase a life insurance policy.  Transamerica also intends to rely on any evidence of consent that is later learned during discovery in this action. Transamerica makes reference to all facts included in the documentation being included in its document production and any supplemental document productions.  Transamerica reserves the right to supplement this answer later in this case as it learns additional facts in discovery.

11.      Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**ANSWER:**    Transamerica objects to this interrogatory as vague and ambiguous, overly broad, and unduly burdensome.  Among other things, the interrogatory lacks any temporal,

geographic, or subject matter limitations. Transamerica also objects on the grounds that the interrogatory seeks information that is not relevant to the claims or defenses. Transamerica further objects to the extent this interrogatory seeks confidential or proprietary information. Subject to and without waiving these objections, Transamerica states that it has not taken any disciplinary action against any individual related to the calls allegedly made to Plaintiff.

Respectfully submitted,

*/s/ Katherine Freeman*
**CARY SLOBIN**
State Bar No. 00797445
cary.slobin@nelsonmullins.com
**KATHERINE (KATE) FREEMAN**
State Bar No. 24109889
kate.freeman@nelsonmullins.com
**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone: 469.484.6100
Facsimile: 469.828.7217

**D. LARRY KRISTINIK**
*Admitted Pro Hac Vice*
larry.kristinik@nelsonmullins.com
**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
1320 Main Street, 16th Floor
Columbia, South Carolina 29201
Telephone: 803.255.9531
Facsimile: 803.256.7500

**ATTORNEYS FOR TRANSAMERICA     LIFE**
**INSURANCE COMPANY**

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accord with the Federal Rules of Civil Procedure on this 5th of June 2024.

*/s/ Katherine Freeman___ __*

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| KELLY PINN, on behalf of herself and others similarly situated, | : | CIVIL ACTION FILE NO. 4:24-cv-266-P |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRANSAMERICA LIFE INSURANCE COMPANY, NATHAN JOHNSON, AND BANUELOS INSURANCE AGENCY LLC D/B/A LEADS GURU, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |
| _____/ | | |

**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S**
**SUPPLEMENTAL ANSWERS TO PLAINTIFF'S**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant, Transamerica Life Insurance Company ("Transamerica"), hereby provides the following supplemental answers to Plaintiff's Interrogatories as follows:

**GENERAL OBJECTIONS**

The following general objections apply to the Interrogatories and are incorporated by this reference into each and every objection hereinafter stated as if set forth in full therein.

1.      Transamerica objects to the Interrogatories to the extent they purport to impose requirements and discovery obligations other than or beyond those set forth in the applicable Rules 26(b) and 33 of the Federal Rules of Civil Procedure and any other applicable local rules of this Court.  Moreover, Transamerica objects to these Interrogatories to the extent they purport to require it to conduct anything other than a reasonable and diligent search for information responsive to these Interrogatories.

1

2.      Transamerica objects to these Interrogatories to the extent they seek the disclosure of information that: (i) is protected by any privilege or protection, including, without limitation, attorney-client privilege, attorney work product doctrine and/or common interest and joint defense doctrine; (ii) was prepared in anticipation of litigation; (iii) is a trade secret or is of proprietary or competitively sensitive nature; and/or (iv) is otherwise protected from disclosure under the law. To the extent that the Interrogatories may be construed as seeking such privileged or protected information, Transamerica hereby claims such privilege and invokes such privilege. Inadvertent disclosure of any such information is not intended and shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, or with respect to the subject matter thereof.

3.      Transamerica objects to the Interrogatories to the extent they are not limited by any reasonable time period and, therefore, are overly broad, unduly burdensome, oppressive, and call for information or documents that are neither relevant to the claims, defenses, or subject matter of this case, nor reasonably calculated to lead to the discovery of admissible evidence, or seek information that is no longer in Transamerica's possession, custody, or control.

4.      Transamerica objects to the Interrogatories to the extent that they seek information that is already in the possession, custody, or control of Plaintiff, equally available to Plaintiff, or obtainable from another source that is more convenient, less burdensome, less expensive, or publicly available.

5.      Transamerica objects to the Interrogatories to the extent they are overly broad, are impermissibly vague, and fail to describe the information sought with reasonable particularity. Transamerica further objects to these Interrogatories to the extent they are argumentative, lack

foundation, assume the existence of facts that do not exist or the occurrence of events that did not take place, or incorporate allegations and assertions that are disputed or erroneous.

Subject to and without waiving these General Objections, Defendant responds as follows:

## SUPPLEMENTAL ANSWERS TO INTERROGATORIES

1.    Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**    Transamerica objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Transamerica also objects because the requested information is not relevant to the claims or defenses.  Subject to and without waiving these objections, Transamerica states that Transamerica's legal department and counsel for Transamerica furnished information used to answer these interrogatories.

2.    Identify all employees or vendors involved in making outbound calls as part of any campaign that contacted the Plaintiff. This includes, but is not limited to, (a) third parties that you contracted with who contacted the Plaintiff (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

**ANSWER:**    Transamerica objects to this interrogatory on the grounds that the undefined terms "vendors" and "any campaign" make the interrogatory vague and ambiguous.  Transamerica further objects on the grounds that the interrogatory is overly broad and seeks information not relevant to the claims or defenses.  Subject to and without waiving these objections, Transamerica states that it did not employ or contract with any person or vendor to make outbound calls as part of a call campaign that resulted in a call to the Plaintiff.

3.    Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

10.     State all facts in support of any affirmative defenses you have raised.

**ANSWER:**  Most of Transamerica's defenses rely on the fact that it had no involvement in the alleged calls to Plaintiff and on the position that Plaintiff cannot meet her burden of establishing the requirements for vicarious liability or certifying the putative class.  Additionally, Transamerica states that the evidence will show that it had no relationship with any person or entity making the alleged calls, that it did not authorize the alleged calls to be made, that it had no knowledge about the alleged calls until Ms. Pinn reached out to Transamerica to complain, that it did not ratify the alleged calls, and that the agent Nate Johnson is an independent contractor. Additional defenses are based on the fact that Plaintiff suffered no injury, that Plaintiff had an established business relationship with one or more persons or entities, that Plaintiff's telephone line is not a residential line, and that Plaintiff made misrepresentations about her intent to purchase a life insurance policy.  Transamerica also intends to rely on any evidence of consent that is later learned during discovery in this action. Transamerica makes reference to all facts included in the documentation being included in its document production and any supplemental document productions.  Transamerica reserves the right to supplement this answer later in this case as it learns additional facts in discovery.

11.     Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**ANSWER:**     Transamerica objects to this interrogatory as vague and ambiguous, overly broad, and unduly burdensome.  Among other things, the interrogatory lacks any temporal,

geographic, or subject matter limitations. Transamerica also objects on the grounds that the interrogatory seeks information that is not relevant to the claims or defenses. Transamerica further objects to the extent this interrogatory seeks confidential or proprietary information. Subject to and without waiving these objections, Transamerica states that it has not taken any disciplinary action against any individual related to the calls allegedly made to Plaintiff.

**SUPPLEMENTAL ANSWER:** Transamerica further responds by stating that, after conducting a reasonable inquiry for the time period from 2019 to the present, it has not identified any complaints, formal or informal, involving Nate Johnson, Banuelos Insurance Agency, and/or Leads Guru that related to alleged unlawful or unauthorized outbound calls, other than the present action and the informal complaint that the Plaintiff made to Transamerica concerning Nate Johnson.

Respectfully submitted,

*/s/ Cary Slobin*
**CARY SLOBIN**
State Bar No. 00797445
cary.slobin@nelsonmullins.com
**KATHERINE (KATE) FREEMAN**
State Bar No. 24109889
kate.freeman@nelsonmullins.com
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone: 469.484.6100
Facsimile: 469.828.7217

**D. LARRY KRISTINIK**
*Admitted Pro Hac Vice*
larry.kristinik@nelsonmullins.com
**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
1320 Main Street, 16th Floor
Columbia, South Carolina 29201
Telephone: 803.255.9531
Facsimile: 803.256.7500

**ATTORNEYS FOR TRANSAMERICA LIFE**
**INSURANCE COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accord with the Federal Rules of Civil Procedure on this 10th of September 2024.

*/s/ Cary Slobin_____*

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| KELLY PINN, on behalf of herself and others similarly situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TRANSAMERICA LIFE INSURANCE COMPANY AND LEADS GURU LLC | : |
| | : |
| Defendant. | : |

CIVIL ACTION FILE NO. 4:24-cv-266-P

_____/

**PLAINTIFF'S FIRST SET OF DISCOVERY**

**INTERROGATORIES**

1.    Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**


2.    Identify all employees or vendors involved in making outbound calls as part of any campaign that contacted the Plaintiff. This includes, but is not limited to, (a) third parties that you contracted with who contacted the Plaintiff (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

**ANSWER:**


3.    Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

**ANSWER**:

4.      Identify all third parties or sub-vendors used by your vendors to for you as part of your relationship with any vendor identified in response to Interrogatory No. 2.

**ANSWER:**


5.      Identify each of the individuals that spoke with Plaintiff from your company or any of its vendors.

**ANSWER**:


6.      If you contend that Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

**ANSWER:**


7.      If you contend that a third party made the calls alleged in the complaint, identify that third party and state all facts in support of the same.

**ANSWER:**


8.      Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

**ANSWER:**

9.      Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact the Plaintiff.

**ANSWER:**


10.     State all facts in support of any affirmative defenses you have raised.

**ANSWER**:


11.     Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**ANSWER**:


**DOCUMENT REQUESTS**

1.      Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE:**


2.      Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:**

3

82

3.      Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into outbound calls made to Plaintiff.

**RESPONSE:**

4.      Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.

**RESPONSE:**

5.      Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

**RESPONSE:**

6.      All contracts or documents representing agreements with any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE:**

7.      All internal communications at your company regarding any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE:**


8.      All contracts or documents representing agreements with any third party that

dialed the calls to the Plaintiff.

**RESPONSE:**


9.      All communications with any third party that dialed the calls to the Plaintiff.

**RESPONSE:**


10.      All internal communications at your company regarding any third party that

dialed the calls to the Plaintiff.

**RESPONSE:**


11.      All contracts or documents representing agreements with Nate Johnson.

**RESPONSE:**


12.      All communications with Nate Johnson.

**RESPONSE:**


13.      All internal communications at your company regarding Nate Johnson.

**RESPONSE:**

14.    Please produce all documents relating to insurance coverage of the acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.

**RESPONSE:**

15.    Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.

**RESPONSE:**

16.    Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

   a)  compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;

   b)  obtaining or verifying prior express consent;

   c)  complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE:**

6

17.     Please produce all documents containing any of the following information for each outbound telemarketing call sent by Nate Johnson or by you for leads to Nate Johnson or by any of your vendors to the Plaintiff:

a)  the date and time;

b)  the caller ID;

c)  any recorded message used;

d)  the result;

e)  identifying information for the recipient; and

f)  any other information stored by the call detail records.

**RESPONSE:**


18.     All communications with any third party concerning this litigation other than your attorney.

**RESPONSE:**


Dated: May 6, 2024                          Plaintiff,
                                            By her attorney

                                            *s/ Anthony Paronich*
                                            Anthony Paronich
                                            **Paronich Law, P.C.**
                                            350 Lincoln St, Suite 2400
                                            Hingham, MA 02043
                                            Phone: (617) 485-0018
                                            Fax: (508) 318-8100
                                            anthony@paronichlaw.com
                                            *Pro Hac Vice*

                                            Attorney for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

On this May 6, 24, the undersigned served the foregoing on counsel for the Defendant

<u>*s/ Anthony Paronich*</u>
Anthony Paronich