## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Kelly Pinn<br><br>                    Plaintiff,<br><br>        v.<br><br>TransAmerica Life Insurance Company<br>et al<br>                    Defendants. | Case No. 4:24-cv-00266-P<br><br>**JURY TRIAL DEMANDED** |

## REPLY IN SUPPORT OF MOTION
## TO COMPEL TRANSAMERICA LIFE INSURANCE COMPANY
## TO PROVIDE DISCOVERY RESPONSES

## INTRODUCTION

Defendant Transamerica Life Insurance Company's response in opposition to the

Plaintiff's motion to compel suffers from two major deficiencies that demonstrate that this Court

should compel responses to the requests sought. *First*, TransAmerica understandably hangs its

hat on why the information sought is not relevant to proving agency through a ratification theory.

However, in so doing, TransAmerica ignores the other ways that a TCPA plaintiff can prove

vicarious liability: either through ratification *by omission*, i.e. not doing more to ensure agents'

and their telemarketers' compliance with the TCPA, or implied actual authority. And the

discovery sought to be compelled seeks to uncover exactly that. *Second*, TransAmerica tries to

distinguish *Monitronics* on distinctions without differences that it identifies. However, as will be

explained, *Monitronics* is on all fours with this case and the contrary cases that the Defendant

cites are readily distinguishable because they have few similarities with the conduct at issue here

and do not address ratification through willful ignorance and omission. Therefore, this Court

should follow *Monitronics'* lead and compel the documents requested.

1

## ARGUMENT

**1. TransAmerica Inappropriately Focuses on the Wrong Vicarious Liability Standards in An Attempt To Demonstrate Irrelevance. Applying the Correct Standards Show that The Discovery Is Relevant.**

As its first argument for why the Plaintiff's motion to compel should fail, TransAmerica contends that the discovery sought is irrelevant to proving ratification. However, in so doing, TransAmerica fails to mention that under applicable TCPA case law, a TCPA plaintiff can prove ratification in two ways, and can also use the information sought to prove implied actual authority. TransAmerica only addresses one theory of ratification: the knowledge theory.

Start with ratification. A party "may ratify an act by failing to object to it or to repudiate it," and "receiving or retaining [the] benefits it generates." RESTATEMENT (THIRD) OF AGENCY § 4.01 (AM. L. INST. 2006). TransAmerica's argument is hyper-focused on this one way of two possible ways to prove ratification and misstates the law on this point. It is true that, in the TCPA context, a plaintiff can prove ratification by demonstrating that a principal like TransAmerica ratified the actions of agents like Johnson and LeadsGuru by continuing to do business with them after knowing of specific TCPA complaints related to them, or similar conduct which would put TransAmerica on notice of a compliance problem with respect to them. *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018). In such a scenario, a principal ratifies an agent's conduct because the principal had knowledge of illegal conduct (such as a telemarketing complaint) but failed to object to or repudiate the conduct.[1]

"The second way a principal can ratify the acts of a third party is through willful ignorance." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019). Under the "willful ignorance" theory, the principal may not know the material facts but has

---

[1] Irregardless of the discovery dispute here, TransAmerica unquestionably ratified Nate Johnson's conduct under this theory by shockingly failing to terminate him, despite this lawsuit.

"ratified with awareness that such knowledge was lacking." RESTATEMENT (THIRD) OF AGENCY § 4.01. "In effect, the principal can ratify the act of a third party—thereby making the third party the principal's agent—even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway." *Henderson*, 918 F.3d at 1074. In other words, Plaintiff alleges that TransAmerica ratified by not explicitly knowing the fact that Johnson and LeadsGuru were engaging in illegal telemarketing, but acted with awareness that knowledge was lacking, because it knew and did nothing with full awareness of the fact that many of its other agents had TCPA problems of the same type here. *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 2024 WL 3293628, at *16 (S.D.N.Y. July 3, 2024).

In such a way, evidence of illegal calls not involving Nate Johnson or LeadsGuru *is* relevant to the issue of ratification *by willful ignorance*. A plaintiff can thus *also* prove that a principal ratified conduct in the TCPA context by demonstrating that the principal failed to take remedial action with respect to *all* its agents, such as failing to implement meaningful compliance, monitoring, or audit programs, when some of its agents have stood accused of engaging in unlawful conduct. In such cases, a principal has a duty to investigate and put safeguards in place to ensure that agents do not commit unlawful conduct of which a principal might be aware, even if such conduct involves other principals. *Id.*; RESTATEMENT (THIRD) OF AGENCY § 4.06 (explaining that, in such cases, a principal may have "knowledge of facts that would have led a reasonable person to investigate further.").

Accordingly, compelling production of TCPA complaints with respect to TransAmerica's other agents and their vendors is directly relevant to the Plaintiff's willful ignorance theory of ratification, as it will develop facts showing whether or not TransAmerica had knowledge of facts that would have led them to investigate the conduct of their agents further, or possibly put

policies, procedures, and safeguards in place to prevent the exact conduct at issue here. For instance, if TransAmerica had hundreds of complaints regarding its agents across the country hiring third party vendors to place illegal telemarketing calls and failed to take corrective action, such as by requiring its agents to only use approved vendors that have been screened by TransAmerica for TCPA compliance, then TransAmerica may be liable under this theory. None of the cases cited by TransAmerica, including *Aderhold*, *Bradley*, *Mey,* and *Johansen*, addressed the *willful ignorance* theory of ratification; instead, each one of those cases focuses on the first way to prove ratification: the "knew or should have known" standard. However, under the second, willful ignorance, standard, previous complaints about other agents are sufficient to show that TransAmerica had notice of telemarketing problems involving its agents but did nothing as a result, such as restricting them to purchasing leads from approved sources.

Various common-sensical examples also illustrate this principle well. One can imagine a grocer purchasing tainted food products from one of the many suppliers contracts with. In such a case, the principal, the grocer, may have knowledge of material facts, such as a food safety problem, affecting a handful of suppliers. Accordingly, the grocer may be liable under the willful ignorance theory of ratification to the extent that it, for instance, did not implement steps to audit all its suppliers for that food safety issue (e.g. by testing), even if the particular agent/supplier at issue did not have any previous problems with respect to food safety. *See Coffelt v. Kroger Co.*, No. EDCV161471JGBKKX, 2017 WL 10543343, at *3 (C.D. Cal. Jan. 27, 2017).

So too here. Indeed, the foregoing examples are in lockstep with the Restatement's example of a company's senior management adopting harassing and abusive behavior of an employee by observing that behavior without taking any action to repudiate it. RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. b (AM. L. INST. 2006). In sum, TransAmerica's agents are just

4

like a grocer's suppliers. If TransAmerica knew that some of its agents were disregarding federal telemarketing law by using noncompliant vendors, just if a grocer knows that some of its suppliers are disregarding food safety laws, TransAmerica has a duty to implement corrective action to avoid such issues across its entire agency force. If TransAmerica knew its agents were engaging in illegal telemarketing of the ilk here, that is exactly the sort of "red flag that would lead a reasonable person to investigate whether [its agents were] engaging in unlawful activities" requiring implementing corrective actions to avoid ratifying. *Cacho*, No. 23-CV-11157 (LJL), 2024 WL 3293628, at *17 (S.D.N.Y. July 3, 2024) (citing *Kristensen*, 879 F.3d at 1015).

Moreover, even though TransAmerica contends that it had no dealings with third party telemarketing vendors hired by its agents, like LeadsGuru, it need not to nevertheless be liable for LeadsGuru's conduct. This is so because of *implied* actual authority, which the information sought to be compelled will also prove. "Implied actual authority comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction." *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020). "In contrast to express authority, an agent's implied [actual] authority may arise from the express delegation of actual authority and unless its extent is otherwise expressly limited, implied authority carries with it the power to do all that which is reasonably necessary to carry into effect the power actually conferred." *Dickson v. Direct Energy, LP*, No. 5:18-CV-00182-JRA, 2024 WL 4416856, at *8 (N.D. Ohio Oct. 4, 2024).

Here, there can be no question that TransAmerica authorized its insurance agents to go off and hire whatever vendors they wanted, like LeadsGuru, to generate business for such agents and ultimately TransAmerica, regardless of whether or not such vendors were TCPA compliant or otherwise might act in a manner that might violate the TCPA. Through the information sought

to be compelled, the Plaintiff hopes to demonstrate that TransAmerica instructed its agents to source leads without ensuring that proper procedural safeguards remained in place, such as by "not insisting they come from any particular source, instruct[ing] that the leads need not be backed by TrustedForms, [or directing] leads could consist of generic "opt in" data." *Id.*

Thus, complaints to TransAmerica regarding its agents calling conduct, and any responses thereto, will go a long way in proving implied actual authority and ratification though omission. Discovery has revealed that TransAmerica took no steps to ensure or audit agents' compliance with the TCPA, nor did they even train their agents on the TCPA, what leads to accept, or what questions to ask vendors they are seeking to purchase leads from, apart from a PowerPoint presentation. Therefore, if TransAmerica gave and continued to give *no direction* to its agents regarding TCPA compliance, even in light of multiple complaints about the exact same issue, its agents can be said to have done actions consistent with TransAmerica's explicit lack of direction in that regard, thus demonstrating TransAmerica's liability for the conduct.

### 2. TransAmerica Pays Insufficient Heed to *Monitronics*.

TransAmerica understandably goes to great lengths in an attempt to distinguish this case from the Northern District of West Virginia's granting of a motion to compel nearly identical discovery, but all it identifies are misstatements of the facts of the case and other distinctions without differences. The arrangement at issue in *Monitronics* is nearly identical to that here of a three-tiered structure. Monitronics sold security systems; TransAmerica sells life insurance. *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476, at *1 (N.D.W. Va. Jan. 28, 2014). Like TransAmerica, Monitronics had agreements with numerous agents, including a company called VMS, that held themselves out as "authorized dealers" and sold Monitronics' products, much like Johnson. *Id.* In turn, those agents, like VMS and Johnson, hired third parties, like LeadsGuru, to place calls on their behalf. *Id.* No part of the record

6

indicates that VMS itself made the calls or that it was hired to make telemarketing calls, as TransAmerica claims. To the contrary, the record is replete with references to "VMS['] agents" who "placed calls on their behalf." *Id.* Nor does any part of the record indicate that Monitronics contracted with those callers, another attempt to distinguish the record here that simply falls flat.

Just as here, the defendants contended that "complaints about other dealers" (i.e. agents other than Nate Johnson) were "not relevant to Plaintiff's claims against VMS" and were "not relevant to plaintiff's vicarious liability theory." *Id.* at *3. Not so. As the Court stated, and as TransAmerica contests, "[I]nformation regarding other dealers may show that Monitronics and UTC responded differently to other dealers accused of violating the TCPA than they did to VMS. Such evidence would be relevant for demonstrating whether Monitronics and UTC took 'effective steps within its power to force [VMS] to cease [its] conduct.'" *Id.* at *7.

TransAmerica's contention that "VMS was hired by Monitronics for the specific purpose of making telemarketing calls to consumers" (Br. at 9) is contrary to the record and belies logic and common sense as a point of distinction. It hardly justifies holding that the information held to be relevant there is irrelevant here, especially because, as immediately described above, the Court explained how such information was relevant not only to an actual authority theory, as TransAmerica seems to seize on, but also a willful ignorance ratification theory. Just as here, the Court reasoned that if Monitronics responded differently to other dealers (agents) accused of the same conduct or failing to take steps to avoid such conduct from taking place or ceasing it, such evidence would prove ratification. TransAmerica admits as much. (Br. at 10). But in a stunning about-face, it claims that TCPA complaints involving other vendors, and TransAmerica's responses thereto, including TransAmerica's failure to take subsequent remedial measures in

response to such complaints, has nothing to do with TransAmerica's treatment of Nate Johnson because he had no such complaints.

That doesn't track. Merely because *Johnson* had no such complaints does not mean that TransAmerica knew of other vendors' noncompliance with the law but failed to do anything with respect to its other agents and vendors throughout its sales force, thus demonstrating willful ignorance and making the information sought relevant as to that theory of vicarious liability. The information sought to be compelled also would demonstrate that TransAmerica failed to take subsequent remedial measures into illegal telemarketing conduct, such as requiring agents to use only approved vendors or requiring specific TCPA evidence based on identified problem areas, despite such measures' feasibility. Accordingly, the discovery sought to be compelled is also relevant to the issue of whether or not TransAmerica took subsequent remedial measures.[2]

This Court is also guided by the litany of other courts in the TCPA context that have cited favorably to *Monitronics* and its reasoning in compelling the same discovery sought here. In *Henderson*, 2015 WL 4742346, at *4, for example, the Court compelled the identity of all agents and vendors that a company used to conduct telemarketing, not just the Plaintiff, and cited to other courts that have found that TCPA "discovery properly includes entities other than the specific entity that made the allegedly improper call or communication to the named plaintiff." And the Court in *Medina v. Enhanced Recovery Co., LLC*, No. 15-14342-CIV, 2017 WL 5196093, at *4 (S.D. Fla. Nov. 9, 2017), shows why the information sought to be compelled here is especially important in the class action context, since an "individual could represent a class called by different vendors if there is 'substantial similarity between the conduct' of each third

---

[2] TransAmerica will likely counter that subsequent remedial measures are inadmissible for proving liability at trial. That would miss the point. Subsequent remedial measures are still admissible for other purposes. Evidence also need not be admissible to be relevant. And relevance is the crux of the dispute here on a motion to compel.

party vendor at issue." (citing both *Henderson* and *Monitronics*). And, as has been discussed, in addition to proving classwide claims and subsequent remedial measures, the information is plainly relevant to proving vicarious liability. "Vicarious liability, however, does not require proof of a formal agency relationship; instead, a plaintiff may use principles of apparent authority and ratification to establish such liability." *Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at *6 (S.D.W. Va. Oct. 4, 2018) (citing *Monitronics*, 2014 WL 316476, at *6).

### 3.  The Information is Relevant to Treble Damages.

As support for its contention that the information sought is not relevant to the issue of treble damages, TransAmerica cites to the Southern District of Texas' opinion in *Shields v. Gawk Inc.*, 2019 WL 1787781 (S.D. Tex. Apr. 24, 2019). However, other Courts have declined to apply *Shields* or its reasoning. For example, in *Echevvaria v. Diversified Consultants, Inc.*, No. 13 CIV. 4980 LAK AJP, 2014 WL 929275, at *9 (S.D.N.Y. Feb. 28, 2014), the Court cited *Mey* for the proposition that the evidence presented sufficed to demonstrate a "knowing" or "willful" violation of the statute. Even more problematically, TransAmerica uses its own rank speculation on what its production *might* contain and the speculation of the outcome of a trial or summary judgment motion in order to argue that the actions it took with respect to other agents would prove, as a matter of law, have no bearing on the Plaintiff's entitlement to treble damages.

But that's not the standard on a motion to compel for relevance. In fact, it proves relevance. The Plaintiff is entitled to discover any information that has "any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." FED R. EVID. 401. Even *if* the Plaintiff did not prevail in demonstrating that evidence of prior complaints with respect to other vendors entitled the Plaintiff and the class to treble damages, evidence of actions TransAmerica took with respect to those vendors would obviously make the Plaintiff's claims for treble damages more or less

probable. And treble damages, provided for by statute, are plainly of consequence here. For its part, TransAmerica is unable to point to *any case* categorically holding that the information sought is *irrelevant* to treble damages, at all. The merits are not the same thing as relevance.

This is not to mention the fact that other courts have applied treble damages under the "knew or should have known" standard of ratification vicarious liability, including in *Dish Network*. TransAmerica attempts to distinguish *Dish* by arguing that that case involved the first type of ratification, that of a knowingly non-compliant vendor. This distinction is a product of TransAmerica's undue reliance on knowing ratification, and complete dismissal of the second type of ratification, willful ignorance, throughout its brief. To be sure, the issue of whether or not treble damages can be awarded against a principal that knows of illegal conduct committed by its agents but takes no steps to mitigate it, is an issue of first impression that has not yet been addressed. But the fact that an issue is one of first impression does not render it irrelevant.

Indeed, as several courts have explained, the Plaintiff's theory may have some legs in proving a "knowing" violation of the TCPA. In *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 656 (N.D.W. Va. 2014), the Court held as sufficient at summary judgment for the award of treble damages under a "knowing" standard, "DISH's admission that a message using an artificial or prerecorded voice was played on several calls." So too when there was no contrary allegation that the caller "made the offending calls inadvertently." *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 6699188, at *8 (N.D. Ill. Dec. 9, 2019). Thus, if the Plaintiff can prove that TransAmerica did not inadvertently refuse to police its agents, as through the discovery Plaintiff seeks to compel, she would be well on the way to proving treble damages.

## **CONCLUSION**

For the reasons stated herein, the Plaintiff's motion to compel should be granted.

10

RESPECTFULLY SUBMITTED AND DATED this November 26, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*


## CERTIFICATE OF SERVICE

We hereby certify that on November 26, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

*/s/ Anthony Paronich*
Anthony Paronich